# SEDRIC S. HOWELL et al. v. COY DAVIS et al.—306 S. W. (2d) 9.

Eastern Section. March 26, 1957.

Petition for Certiorari Denied by Supreme Court, August 19, 1957.

C. A. Bales, B. J. Ramsey, Jr., and Ben Catlett, Jefferson City, for appellants.

D. S. Beeler, Rutledge, for appellees.

McAMIS, P. J.  The original bill in this case was filed by the nieces and nephews of William Howell, deceased, and as his heirs at law, to set aside as a cloud upon their title to a farm in Grainger County a deed executed by Mary Howell, the widow of William Howell, on April 8, 1953.  The farm, valued at more than $20,000, was conveyed as a gift to Mrs. Howell by her father in the division of his estate among his children in 1901.  William Howell was also named as a grantee in the deed, creating an estate by the entirety.  Mr. and Mrs. Howell lived on the farm until his death, intestate, in 1953.

The bill named as defendants, among others, Coy Davis and wife Pearl Davis and Onie Mitchell Vineyard, grantees in the deed of April 8, 1953, by which Mrs. Howell undertook to convey the farm, subject to a reserved life estate, in consideration of the grantees agreeing to provide her with a home for the remainder of her lifetime.  Mrs. Davis and Mrs. Vineyard are nieces of Mrs. Howell.  The bill charges that this purported conveyance is a nullity because Mrs. Howell by deed dated

April 3, 1941, conveyed all her right, title and interest in the farm to William Howell.

The deed last mentioned provided that it was not to take effect until the death of Mary Howell and the defendants filed a demurrer to the bill predicated on the insistence that the instrument was a will and not a deed. The Special Chancellor sustained the demurrer and dismissed the bill but, upon appeal, this action was reversed. Howell v. Davis, 196 Tenn. 334, 268 S. W. (2d) 85.

Mrs. Howell was not a party when the case was before the Supreme Court, but, upon the remand, she became a party and filed a cross bill asserting that if the instrument was a deed and not a will, as held by the Supreme Court, she executed it as the result of a mistake and upon the misrepresentation of her husband and the attorney who drew it that it was a will and not a deed and "that whoever lived the longest got it all". It was further alleged that she and her husband stood in a confidential relationship and that, under the circumstances, he held the legal title as trustee for her use and benefit. The cross bill alleged that she was liable to her grantees under the covenants of the deed of 1953 and prayed that the deed of 1941 be cancelled and removed as a cloud upon the title.

Since the theory and contents of the original bill are set out in the opinion of the Supreme Court, supra, it is not necessary to set them out here. The Court considered in the opinion the insistence that under the allegations of the bill Mary Howell was estopped after more than twelve years to question the deed of 1941. We quote the pertinent portion of the opinion:

"We think it proper to add that if the case had been tried and argued before us on the proposition that by the deed of 1941, Mary Howell was estopped to make a subsequent valid conveyance in conflict with the provisions of the deed of 1941, we would have reached the same result. Ruffin v. Johnson, 52 Tenn. 604; Poindexter v. Rawlings, 106 Tenn. 97, 59 S. W. 766; Ankenbauer v. Ankenbauer, 6 Tenn. App. 221."

On petition to rehear the Court said: "The foregoing does not authorize any decree that Mrs. Howell is estopped, but it is a clear statement of a fact that she would not be permitted to disavow her deed." The reason for not so decreeing, as we understand, was the fact that Mrs. Howell was not then a party to the suit and the further reason that the case was not presented on the theory of estoppel.

Mrs. Howell has since died and the cause has been revived in the name of her executor. The defense of estoppel is now presented and urged upon us as a complete defense to the cross bill and, as shown, Mrs. Howell through her executor is now before the court. Appellees, cross defendants below, insist that the holding of the Supreme Court on this question has become the law of the case, while appellants insist that it is not binding on them because Mrs. Howell was not before the court and because the issue of misrepresentation and mistake as to the nature of the instrument had not been developed when the case was before the Supreme Court.

We think neither position is entirely correct. It is not correct to say that the decision of the Supreme Court has become the law of the case as to a party not

then before the Court. On the other hand, the holding of the Supreme Court is binding on this Court as a precedent, but, of course, that Court did not consider the questions of fraud and mistake or confidential relationship as developed by the pleading and proof following the remand. The Chancellor sustained the original bill and dismissed the cross bills of Mrs. Howell and her grantees, Coy Davis, et al., and it is that action we are called upon to review on this appeal of the cross complainants.

The proof shows that Mr. and Mrs. Howell were farm people of slight education and with little or no experience in legal matters. In 1941, when Mrs. Howell conveyed her interest in the property to her husband she was approximately 78 years of age. He was a few years younger. They had a married daughter living nearby but who later died childless about 1945.

A short time before the deed was executed Mrs. Howell suffered an accident on the farm which both she and her husband thought she could not survive. As a result and at his insistence they went to Rutledge to consult an attorney about having the title to the farm fixed in such a way that, after her death, Mr. Howell would have the property "as a homestead" and so that he could not be deprived of it or disturbed in his possession of the land. The proof is that Mr. Howell was the dominant party and handled without question such family business matters as arose. He selected the attorney and explained the business in hand.

For some unexplained reason, the right of survivorship which Mr. Howell already had under the deed of 1901 was overlooked or not given proper consideration.

It accomplished the purpose the parties had in mind in consulting an attorney, at least, as explained by Mr. Howell to his wife. Mrs. Howell's testimony, though confused on some minor points, is clear and unequivocal as to the representations made by her husband and her purpose in executing the deed. There is abundant evidence that Mr. Howell thereafter repeatedly stated in her presence that the title to the farm was fixed in such a way that if he should die first Mrs. Howell would get it all and that if Mrs. Howell should die first he would get it all. We think these statements either show that the parties mistakenly regarded the deed of 1941 as a testament or that Mr. Howell's statements are evidence that he concealed until his death the original misrepresentation as to the purpose and effect of the deed.

Following the death of Mr. Howell, Mrs. Howell being in failing health and needing a home in her declining years consulted an attorney as to the effect of the deed of 1941 and whether she could convey the farm to her nieces in consideration of future care and support. They were advised that the deed of 1941 was ineffective to convey her title. Mr. and Mrs. Davis have since taken Mrs. Howell into their home and provided hospital and medical care at great expense over and above the income from the farm.

In view of the marital relationship and the fact that Mr. Howell was the more dominant personality and managed the business affairs of the family; that he selected the attorney and was the moving influence in the execution of the deed which was greatly to the disadvantage of Mrs. Howell, we think a confidential relationship existed between them and that the burden of proof rested

upon his heirs at law to show that, in executing the deed of 1941, Mrs. Howell was fully and correctly advised of the purpose and effect of the deed and that there is a presumption that the deed was fraudulently obtained.

"The relation of husband and wife has been regarded as one of special confidence and trust, and in contracting with each other they must exercise the utmost good faith. The court will closely scrutinize all transactions between them to the end that injustice and oppression may not result." 41 C. J. S. Husband and Wife sec. 120, p. 594. And see Id., sec. 514, pp. 1093, 1094.

In the absence of proof that the wife is the more dominant influence, the courts will jealously scrutinize conveyances by her to her husband to prevent her from being overreached or defrauded. If the conveyance is not voluntarily and understandingly made or is brought about by anything amounting to a constructive fraud on his part, it is voidable upon application of the wife in a court of equity, except as to bona fide purchasers. 26 Am. Jur. 876, Husband and Wife, Section 269. See numerous cases cited in the footnotes and compare Gardine v. Cottey, 360 Mo. 681, 230 S. W. (2d) 731, 18 A. L. R. (2d) 1100.

While the cases are not in agreement as to the presumption of unfairness and fraud arising ipso facto from the marital relationship, there seems to be little or no dissent from the view that, at least, where the husband is shown to be the dominant influence and obtains a disproportionate advantage over the wife, the burden of proof rests upon him to show that the wife acted freely and deliberately and with a fair understanding of the effect and purpose of the conveyance.

See 26 Am. Jur. 880, Husband and Wife, Section 273, and numerous cases cited in the notes. Except as to bona fide purchasers, we think this is the correct and sounder rule.

■ There is no proof here to overcome this presumption. On the contrary, the proof and all the circumstances tend to show that the husband initiated and carried out the conveyance, using an attorney of his own selection, and that the wife completely misunderstood the purpose and effect of the deed. Certainly, it was without consideration or benefit of any kind to her.

■ We do not think the wife's right to seek a cancellation of the deed is barred by the statute of limitations. The husband's statements repeated over the years and until shortly before his death that if he should die first Mrs. Howell would get the entire property had the effect of concealing from her the fraud, presumed under the law, which brought about the conveyance. It is well recognized that fraudulent concealment prevents the running of the statute of limitations and that the statute begins to run from the time of discovery of the fraud. Boro v. Hidell, 122 Tenn. 80, 120 S. W. 961; Bodne v. Austin, 156 Tenn. 366, 2 S. W. (2d) 104. In view of the nature of the relationship between the parties, we do not think the right to seek cancellation should be barred on the grounds of laches and estoppel, especially since Mrs. Howell continued to occupy the property until her death, and no loss or prejudice resulted to him or his heirs and his statements during the years may have lulled her into believing she would get the property in event of his death. If the conveyance was made as a result of a mutual mistake, in equity, the statute of limi-

tations would not begin to run until discovery of the mistake. McSpadden v. Parkenson, 10 Tenn. App. 11.

For the reasons indicated the decree will be reversed and a decree rendered for cross complainants. The cause is remanded and costs adjudged to appellees.