Wilma Lois GABBERT, Appellee,

v.

Lee Wayne JOHNSON, Jr., George L. Wilson, and Marie Wilson, Appellants.

No. 52947.

Court of Appeals of Oklahoma, Division No. 2.

June 16, 1981.

Released for Publication by Order of Court of Appeals June 16, 1981.

Patrick H. Kernan, Dykeman, Williamson & Williamson, Oklahoma City, for appellee.

Jack S. Dawson, Oklahoma City, for appellants.

BRIGHTMIRE, Judge.

The plaintiff, Wilma Lois Gabbert, married defendant Lee Wayne Johnson, Jr., in 1971. One child was born of the union. The young couple agreed on the terms of a divorce decree in 1974, which, among other things, awarded plaintiff "all right, title and interest in and to ... [the] Homestead located at 2213 Keeton Drive, Oklahoma City, Oklahoma." Plaintiff lived in it until 1977 when, in contemplation of remarriage, she decided to sell the house. It was at this point that she discovered her former in-laws owned a two-thirds interest in it. She brought this action against her former husband and his parents alleging she was induced to make an unwise "divorce settlement" as a result of misrepresentations on the part of all defendants to the effect that title to subject property was vested solely in

her and defendant Johnson. She claimed the divided ownership forced her to postpone the sale of the house and to lose prospective buyers, thus damaging her in the amount of $15,000. She asked for an additional $10,000 as punitive damages. The jury returned a verdict against all defendants for $13,666.66[1] and against Lee Johnson for $2,000 in punitive damages. Judgment was entered accordingly.

■ Defendants seek reversal of the judgment on the grounds that: (1) the verdict is not supported by competent evidence; (2) evidence concerning adultery on the part of Johnson was erroneously admitted and proper evidence by defendants was excluded; (3) improper instructions were given; (4) the court refused to allow the jury to fix the damages; and (5) the court failed to award the defending Wilsons a judgment for rents received by plaintiff.[2]

## I

Viewed in its proper perspective, plaintiff's action is one seeking redress for detriment she claims she sustained as a result of false representations made by defendants which induced her to enter into an improvident out of court "divorce settlement." She evidently realized, however, that she had received all the property the parties had and that the trial judge could not have conveyed to her anymore interest in the real property than he did (one-third), because she alleged her detriment consisted of: (1) being unable to sell the house; and (2) settling "the divorce action for a sum much less than [she] otherwise would have agreed on." She did not specify how much damage she sustained from the latter,[3] but said merely that her inability to sell the house damaged her in the sum of $15,000.

1. See note 6 infra.

2. This proposition was evidently an afterthought because it was not raised by defendants in their motion for new trial nor was it asserted in the petition in error. The point, therefore, has not been properly preserved for review.

## II

The threshold question is whether or not plaintiff has, in effect, launched a collateral attack on the divorce decree. We think she has insofar as her lawsuit relates to defendant Lee Johnson.

The present action is not based on nor brought to annul a contract. The couple did not execute any written property settlement agreement, parts of which were incorporated into a divorce decree and parts of which were not. What they did was agree on the terms of a decree that they wanted the judge to render. The court did hand down such a judgment and later, plaintiff says, she discovered she did not get all the property she thought she was going to get under the decree. Instead of attempting to obtain some type of relief through a direct attack on the judgment, she initiated this suit for damages on the ground that she was fraudulently induced by misrepresentations of defendants to agree to the decree.

A judgment by statutory definition is a "final determination of the rights of the parties in an action."[4] The subject matter involved in the divorce action, with regard to which the couple's rights were resolved, related to: (1) the granting of the divorce; (2) custody and support of the couple's minor child; (3) their property; and (4) alimony.

In the divorce action filed by plaintiff, the court: (1) granted her a divorce; (2) gave her custody of the couple's minor child and ordered the man to pay $150 per month for child support; (3) awarded plaintiff all of the couple's property, including all their interest in what is specifically designated the "homestead"; and (4) ordered the man to pay the woman $1,800 alimony at the rate of $100 a month, her attorney's fees and all other costs. The effect of the jury verdict was to award plaintiff the value

3. It is interesting to note in this regard that she only asked for $4,800 in her divorce petition, and she subsequently settled for $1,800. Any detriment she may have incurred, therefore, would not have exceeded $3,000 in any event.

4. 12 O.S.1971 § 681.

equivalent of the other two-thirds of the house—a modification of the rights of the parties determined in the divorce decree.

▮ Both parties were represented by able counsel. Once she filed her action, the woman no longer enjoyed a confidential relationship with her husband. He did not have to voluntarily disclose anything.[5] It was incumbent upon her to use available legal modes of discovery to acquaint herself with facts sufficient for her to make a self-protective "divorce settlement." As a matter of fact, plaintiff admitted several incidents which put her on notice of her in-laws interest in subject home. She admitted, for instance, being told before the marriage of the fact that the house was bought by Lee Johnson and his parents while Lee was in Vietnam. She also said she had seen, from time to time during the marriage, various loan statements and other mailings relating to the house addressed to her in-laws. Having such information it seems incredible that she would not have mentioned the house ownership question to her lawyer who in turn could have made a telephone call to the county clerk's office and in five minutes could have found out in whose name the record title stood.

▮ But nothing like this happened. She chose to seek an adjudication based on what she thought the facts were without any investigation whatsoever. When it turned out one of her assumptions was in error she looked around for someone on whom she could lay blame for her lack of diligence. This she may not do.[6] There no doubt may be factual situations which give rise to an independent postjudgment tort action. But the circumstances would have to be quite different from the ones in this case. The administration of justice would not be well served by allowing every litigant, who finds after he has agreed to a certain judgment that he did not get all he wanted or thought he was getting in the judgment, to sue his former opponent or others for damages he feels he has suffered as a result of the adjudication. To condone such postjudgment litigation is to impair, if not destroy, an inherent attribute of judgments which enjoys a lofty rank in terms of public policy, namely, finality.

### III

▮ The remaining issue concerns the judgment against plaintiff's former in-laws. We hold plaintiff failed to present sufficient evidence to support any recovery against them.

Plaintiff relied on her own testimony for proof of alleged misrepresentations. With regard to the Wilsons, she was unable to recall any misrepresentation made by either of them until after the divorce was granted. Such postdecree statements could not possibly have been relied upon by her in agreeing to the adjudication and, consequently, could not have induced her to act one way or another.

We, therefore, hold that whatever infirmities her cause of action may otherwise have, she failed to prove any recoverable claim against the Wilsons.

### IV

The defendants' motion for directed verdict should have been sustained and the case dismissed. We, therefore, reverse the judgment appealed, dismiss as to Johnson

---

**5.** Plaintiff did not allege concealment of any material fact in her petition. She does argue concealment now as a part of her misrepresentation theory, but the evidence was insufficient to show a legal duty that any of the defendants had to tell her anything.

**6.** Moreover, the damage element of her action is untenable. She could not be entitled to damages for loss of a sale under any circumstance. She did not ask for any certain amount for her loss of right to negotiate for more alimony.

The court, however, instructed the jury to return a verdict for $13,666.66 if they found for plaintiff. This apparently represented two-thirds of subject house's value. Thus, the jury was not permitted to place a compensatory value on her alleged detriment but was only authorized to give her the value equivalent of the other two-thirds interest in the house— something she could not have gotten in the divorce proceeding.

and order that judgment be entered in favor of the Wilsons.

BACON, P. J., and BOYDSTON, J., concur.