Beatrice Goodwin WILLIAMSON, Michael P. Williamson and Linda Faye Bennett, Plaintiffs/Appellees,

v.

Marjorie UPCHURCH, Defendant/Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 16, 1988.

Permission to Appeal Denied by Supreme Court April 3, 1989.

John G. Doak, Hermitage, for defendant-appellant.

Carol L. McCoy, Nashville, for plaintiff-appellees.

## OPINION

KOCH, Judge.

This appeal involves an elderly widow who conveyed her home to a friend in return for the friend's promise to care for her for the rest of her life. Several years later, she sued her friend in the Chancery Court of Davidson County, alleging that the conveyance was the result of fraud and duress. The Clerk and Master, sitting as a special judge without a jury, rescinded the deed but declined to require an accounting of the rents. The friend has appealed, insisting that the evidence does not support rescinding the deed. The widow also takes issue with the trial court's refusal to require an accounting. We have determined that the trial court should not have rescinded the deed and also that the trial court should have ordered an accounting of a portion of the rents.

I.

Beatrice Goodwin Williamson and her husband, Herschel P. Williamson, acquired a duplex on Pennock Avenue in Nashville in 1948. They lived there with their two children until their daughter moved away in 1968 and their son moved away in 1975 or 1976. In September, 1980, they rented a portion of the duplex to Marjorie Upchurch.

Mr. Williamson died in April, 1981. Mrs. Williamson was sixty-five years old at the time and was unable to attend her husband's funeral because she was undergoing neck surgery. She returned to the duplex after being released from the hospital. Although her mental state was fine, she had a long, difficult recovery. Mrs. Upchurch helped care for Mrs. Williamson during this time, and, in return, Mrs. Williamson and her children reduced Mrs. Upchurch's rent.

Mrs. Williamson and Mrs. Upchurch became very good friends, even though Mrs. Upchurch was almost twenty years younger than Mrs. Williamson. Mrs. Williamson's children visited her only occasionally, and so she became Mrs. Upchurch's constant companion. Since Mrs. Williamson had never learned to drive a car, Mrs. Upchurch drove her to her doctor's appointments and on her errands to the grocery store or the bank.

Sometime later, a friend told Mrs. Upchurch about another woman who was looking for someone to help her with her livestock. The woman had no immediate family and planned to leave her farm to whomever would agree to stay with her. Mrs. Upchurch, accompanied by Mrs. Williamson, drove out to the farm several times to talk with the woman. However, Mrs. Upchurch finally decided that the situation did not appeal to her and told Mrs. Williamson that she did not intend to move out of the duplex.

Mrs. Williamson also worried that she would have no one to care for her in her old age. Several months after Mrs. Upchurch decided not to move, Mrs. Williamson offered to convey the duplex to Mrs. Upchurch if Mrs. Upchurch would agree to stay in the duplex and care for her. Mrs. Upchurch declined this offer on several oc-

casions because she was concerned about the adverse reaction of Mrs. Williamson's children. Mrs. Williamson persisted, and finally Mrs. Upchurch agreed.

A mutual friend arranged for Rebecca Stewart, a secretary for an Ashland City lawyer, to prepare the deed. On September 13, 1983, Mrs. Williamson, Mrs. Upchurch, and their friend met with Mrs. Stewart in Ashland City. Mrs. Williamson told Mrs. Stewart that "she had children, but that they were not looking after her and that she was selling this to her [Mrs. Upchurch] with the understanding that she [Mrs. Upchurch] was to take care of her." Mrs. Stewart prepared the deed and notarized Mrs. Williamson's signature. The ladies recorded the deed in the Davidson County Register's office later the same afternoon.

Mrs. Upchurch suggested that Mrs. Williamson should tell someone about their agreement. Mrs. Williamson refused to tell her children and insisted that Mrs. Upchurch not tell them either. Several weeks after recording the deed, Mrs. Upchurch and Mrs. Williamson told William B. Goodwin, Mrs. Williamson's brother, that Mrs. Williamson had conveyed her house to Mrs. Upchurch and, in return, that Mrs. Upchurch had agreed to pay rent, to pay the property taxes, and to keep the property in good repair as long as Mrs. Williamson was alive.

Mr. Goodwin telephoned Mrs. Williamson's daughter shortly after his conversation with his sister and Mrs. Upchurch. Mrs. Williamson's daughter informed her brother who confirmed the transaction by consulting the records in the register's office. Mrs. Williamson's relationship with her children worsened after they found out that she had conveyed the property to Mrs. Upchurch. They visited and telephoned even less frequently. Mrs. Williamson's son even refused to visit his mother when she became hospitalized.

Mrs. Williamson continued to live in one side of the duplex while Mrs. Upchurch and her daughter lived in the other. Mrs. Upchurch continued to pay rent, usually in cash, to Mrs. Williamson. She also began to pay the property taxes and obtained insurance on the property. Mrs. Williamson kept up with her own funds, although Mrs. Upchurch made sure that she paid her bills. Mrs. Upchurch tried to convince Mrs. Williamson to save her money, but Mrs. Williamson insisted on buying clothes and on taking Mrs. Upchurch and others out to eat.

In 1985, Mrs. Williamson suffered the first of a series of strokes. She was alone on her side of the duplex and was unable to call for help. Mrs. Williamson recovered but had trouble sleeping because she was afraid that no one would hear her if she had another attack. In August, 1985, the two ladies decided that Mrs. Williamson should move into the second bedroom on Mrs. Upchurch's side of the duplex to enable Mrs. Upchurch to respond quickly if Mrs. Williamson required help.

Mrs. Upchurch's nephew and his family moved into the side of the duplex vacated by Mrs. Williamson. They paid rent to Mrs. Upchurch who, in turn, gave the money to Mrs. Williamson. Approximately one year later, Mrs. Upchurch's nephew's family moved upstairs, and her father moved into the duplex. Mrs. Williamson was treated like a member of the family and seemed to enjoy being around the other people living in the duplex.

Mrs. Upchurch remarried in April, 1986. She also borrowed $10,000 which she used to renovate the upstairs portion of the duplex and for other improvements. Mrs. Williamson had another stroke in August, 1986. She executed a power of attorney while she was in the hospital, giving Mrs. Upchurch and her husband the authority to take care of her affairs while she was hospitalized.

Mrs. Williamson stayed with her daughter in January, 1987 while Mrs. Upchurch and her husband were on a trip. She never returned to the duplex, even though Mrs. Upchurch and her family were ready to welcome her back. She filed this action in April, 1987.

## II.

The transaction under scrutiny in this case is a contract, not an inter vivos or

testamentary gift. Mrs. Williamson promised to convey the Pennock Avenue duplex to Mrs. Upchurch in return for Mrs. Upchurch's promises (1) to take care of Mrs. Williamson for the rest of her life, (2) to continue to pay rent, (3) to pay for the insurance and property taxes, and (4) to keep the property in good repair. Mrs. Williamson now seeks to invalidate the agreement on the ground that Mrs. Upchurch induced her to part with the property through fraud and duress.

█ Being unable to produce direct evidence of fraud or duress on Mrs. Upchurch's part, Mrs. Williamson based her case on the theory that Mrs. Upchurch took advantage of their confidential relationship by exerting undue influence over Mrs. Williamson. Thus, the success of Mrs. Williamson's case stands or falls on her proof that a confidential relationship existed between the two ladies at the time Mrs. Williamson conveyed the duplex to Mrs. Upchurch. We have reviewed the record in accordance with Tenn. R.App.P. 13(d)[1] and have determined that the evidence preponderates against the trial court's findings that there was confidential relationship between Mrs. Williamson and Mrs. Upchurch in 1983 and that Mrs. Upchurch exerted undue influence over Mrs. Williamson.

█ The party seeking to invalidate a contract or to rescind a conveyance because of mental incapacity or undue influence has the burden of proof. *Wood v. Neely*, 66 Tenn. 586, 588–89 (1874); *Brown v. Weik*, 725 S.W.2d 938, 945 (Tenn.Ct.App. 1983); *Pugh v. Burton*, 25 Tenn.App. 614, 620, 166 S.W.2d 624, 627 (1942).

█ In cases such as this one, the plaintiff frequently seeks to rely upon the presumption that any transaction benefiting the dominant party in a confidential relationship is invalid where there is proof that the dominant party exercised dominion or influence over the weaker party. *Gordon v. Thornton*, 584 S.W.2d 655, 658 (Tenn.Ct.

App.1979); *Roberts v. Chase*, 25 Tenn.App. 636, 651, 166 S.W.2d 641, 650–51 (1942). The strength of the presumption varies according to the circumstances of each case, *Williams v. Jones*, 54 Tenn.App. 189, 207, 388 S.W.2d 665, 673 (1963), but once the presumption arises, the burden shifts to the dominant party to demonstrate that the transaction is proper. *Parsley v. Harlan*, 702 S.W.2d 166, 174 (Tenn.Ct.App.1985); *Howell v. Davis*, 43 Tenn.App. 52, 59–60, 306 S.W.2d 9, 12 (1957).

█ The courts have never clearly defined what a confidential relationship is. *Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn.Ct.App.1974). In general terms, it is any relationship which gives one party dominion or influence over the other. *Turner v. Leathers*, 191 Tenn. 292, 298, 232 S.W.2d 269, 271 (1950); *Roberts v. Chase*, 25 Tenn.App. at 650, 166 S.W.2d at 650. It is not merely a relationship of mutual confidence but rather is one

> where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party.

*Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn.Ct.App.1973).

█ It is not the confidential relationship itself that is of concern to the courts but rather the abuse of that relationship. *Robinson v. Robinson*, 517 S.W.2d at 206. Accordingly, proof of a confidential relationship will not, by itself, give rise to the presumption of invalidity. It must be accompanied by proof tending to show that the free agency of the weaker party was destroyed and replaced by the will of the dominant party. *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn.1977); *Owens v. Breeden*, 661 S.W.2d 887, 889–90 (Tenn.Ct.App. 1983).

---

1. Mrs. Williamson's counsel urges that this Court should review the trial court's factual determinations in accordance with Tenn.Code Ann. § 27–3–103 (1980). The statute was repealed by the Act of May 20, 1981, ch. 449, § 1(10), 1981 Tenn.Pub.Acts 667, 669. However, a standard of review substantially similar to the one embodied in the statute was carried forward in Tenn.R.App.P. 13(d).

■ Evidence of one party's deteriorated mental or physical condition will substantiate the existence of a confidential relationship as well as the ability of the dominant party to influence the weaker party. *Kelly v. Allen,* 558 S.W.2d at 848 (existence of a confidential relationship); *Turner v. Leathers,* 191 Tenn. at 299, 232 S.W.2d at 271–72 (dominion and control). The weaker party need not be legally insane. *Tally's Ex'rs v. Smith,* 41 Tenn. (1 Cold.) 290, 298–99 (1860); *Walsh v. Brown,* 703 S.W.2d 158, 162–63 (Tenn.Ct.App.1985). Any condition rendering the weaker party unable to guard against the dominant party's imposition or undue influence is sufficient. *Mays v. Prewett,* 98 Tenn. 474, 484–85, 40 S.W. 483, 486 (1897); *Craddock v. Cabiness,* 31 Tenn. (1 Swan) 474, 482 (1852).

■ Thus, the question to be answered is not whether the weaker party's decision was a good one, or even whether he knew what he was doing at the time. In these cases, the courts must determine whether the weaker party's decision was a free and independent one or whether it was induced by the dominant party.

■ The record does not support the trial court's finding that Mrs. Upchurch exercised sufficient dominion over Mrs. Williamson to enable her to influence Mrs. Williamson's decisions concerning her money or property. Despite Mrs. Williamson's childhood illness, her limited education, her back problems, and her habitual reliance on her late husband to maintain the family finances, Mrs. Williamson made her own financial decisions after her husband died.

Mrs. Williamson maintained her own accounts and paid her own bills. She spent her money as she pleased, notwithstanding advice from her daughter and Mrs. Upchurch. She also resisted suggestions to save her money or to make a will. She was sufficiently strong-willed in these matters that Mrs. Upchurch usually abided by her wishes because "if she wanted it, she wanted it. She didn't want to wait."

Accordingly, we find that the proof is insufficient to establish the existence of a confidential relationship between Mrs. Williamson and Mrs. Upchurch. While they were close friends and while Mrs. Williamson looked to Mrs. Upchurch and her family to provide for her physical needs, Mrs. Williamson insisted upon making her own decisions with regard to her money and property. While her decisions may not have always been prudent, they were her own.

Also absent from this record are the other suspicious circumstances that usually prompt courts to set aside transactions such as this one. Mrs. Williamson and Mrs. Upchurch did not conceal the conveyance. There are readily identifiable reasons for Mrs. Williamson's conduct, and there was substantial consideration for the conveyance.

Mrs. Williamson believed that her children paid too little attention to her after her husband died, and she desired to provide for her own care in her old age. She offered to convey the Pennock Avenue duplex to Mrs. Upchurch in return for Mrs. Upchurch's promises to care for her, to continue to pay rent, and to assume responsibility for the maintenance and upkeep of the property. Mrs. Upchurch accepted Mrs. Williamson's offer, and Mrs. Williamson executed a deed conveying the property to Mrs. Upchurch. The deed was promptly recorded, and, a short time later, the two ladies explained their agreement to Mrs. Williamson's brother who, in turn, notified Mrs. Williamson's children.

■ A contract, beneficial to the party seeking to invalidate it, should not be set aside in the absence of proof of fraud or duress. *Birdsong v. Birdsong,* 39 Tenn. (2 Head) 289, 297 (1859). There is no direct evidence in this record of fraud, duress, or overreaching on Mrs. Upchurch's part. Accordingly, we find that Mrs. Upchurch's conduct with regard to Mrs. Williamson's decision to convey the duplex does not provide a basis for rescinding the deed.

■ Mrs. Williamson also insists that the deed should be rescinded because she did not receive independent advice before she conveyed the duplex to Mrs. Upchurch in 1983. Proof of independent advice is one way to uphold the validity of a transaction

benefitting the dominant party in a confidential relationship. *Robinson v. Robinson*, 517 S.W.2d 202, 207 (Tenn.Ct.App. 1974). However, the lack of independent advice will not invalidate a transaction when there is no confidential relationship or when there is not proof of fraud, duress, or overreaching on the part of the party benefitting from the transaction. *See McGill v. Headrick*, 578 S.W.2d 377, 384 (Tenn.Ct.App.1978).

### III.

Rescission involves the avoidance or setting aside of a transaction. *Mills v. Brown*, 568 S.W.2d 100, 102 (Tenn.1978). It is an equitable remedy, available where the contract was induced by fraud or duress, *Belote v. Henderson*, 45 Tenn. (5 Cold.) 471, 474 (1868) (duress); *Graham v. First American Nat'l Bank*, 594 S.W.2d 723, 726 (Tenn.Ct.App.1979) (fraud), or where one party unequivocally renounces the contract or is legally unable to perform. *Brady v. Oliver*, 125 Tenn. 595, 617, 147 S.W. 1135, 1140 (1911). It is intended to return the parties to the positions they were in before the transaction took place. *Lindsey–Davis Co. v. Siskin*, 210 Tenn. 339, 342–43, 358 S.W.2d 331, 333 (1962); *Lloyd v. Turner*, 602 S.W.2d 503, 510 (Tenn.Ct.App.1980); *Arledge v. Ridge*, 12 Tenn. App. 415, 417–18 (1930).

■ The record contains no direct proof of fraud or duress on Mrs. Upchurch's part. Likewise, there is no proof that Mrs. Upchurch repudiated or that she is unable to fulfill her obligations to Mrs. Williamson. To the contrary, Mrs. Upchurch stated that she would welcome Mrs. Williamson back as part of her family, that she would help Mrs. Williamson move back into her portion of the duplex if Mrs. Williamson wanted to live there again, and that she would pay Mrs. Williamson the funds due her.

Rather than repudiating her obligations, Mrs. Upchurch affirmed them. Thus, in the absence of proof that the duplex's condition or the way she was being treated justified Mrs. Williamson's decision to leave the duplex, her unilateral decision to move

will not provide grounds to rescind her agreement with Mrs. Upchurch. *See Conner v. Marshall*, 58 Tenn. (11 Heisk.) 706, 710 (1872).

■ Finally, ordering rescission under the facts of this case would also not restore the parties to the September, 1983 status quo. Since 1983, Mrs. Upchurch has spent at least $10,000 to repair and improve the property. Rescinding the deed would result in giving Mrs. Williamson a duplex in substantially better condition than it was when she conveyed it. It would also leave Mrs. Upchurch with debts exceeding $9,500. Even though the property would continue to be encumbered by a mortgage, it is not appropriate to allow Mrs. Williamson to benefit from improvements for which Mrs. Upchurch is paying.

### IV.

■ The trial court declined to require Mrs. Upchurch to account for the rents claimed by Mrs. Williamson because Mrs. Upchurch had "provided many valuable services to the plaintiff ... and she made them in anticipation of compensation." Mrs. Williamson insists that she is entitled to an accounting for the rents she should have received after August, 1985 when she moved into Mrs. Upchurch's side of the duplex. We agree.

Mrs. Williamson reserved for herself "the use and possession" of one side of the Pennock Avenue duplex when she conveyed the property to Mrs. Upchurch in September, 1983. As part of the same transaction, Mrs. Upchurch agreed to continue to pay "rent" to Mrs. Williamson even though the title to the property was in her name. Thus, after September, 1983, Mrs. Williamson was entitled to receive rent for the portion of the duplex occupied by Mrs. Upchurch and to receive any revenue derived from her portion of the duplex.

Mrs. Upchurch stopped paying rent to Mrs. Williamson in August, 1985 when Mrs. Williamson moved to Mrs. Upchurch's side of the duplex. Mrs. Upchurch's nephew and his family moved into the side of the duplex Mrs. Williamson had vacated

and began to pay $100 per month rent. In September or October, 1986, the nephew's family moved upstairs, and Mrs. Upchurch's father moved into Mrs. Williamson's portion of the duplex. Mrs. Upchurch's father also paid rent, but Mrs. Williamson never received this money because Mrs. Upchurch was using it to repay a loan for a detached storage building.

The trial court should have required Mrs. Upchurch to account for the rent due after August, 1985 for her portion of the duplex. Part of the consideration for Mrs. Williamson's September, 1983 conveyance was Mrs. Upchurch's agreement to continue to pay $60 per month rent. There is no evidence that the parties intended that Mrs. Upchurch's obligation would cease if Mrs. Williamson moved to her side of the duplex.

Another part of the consideration for the 1983 conveyance was Mrs. Upchurch's agreement to be solely responsible for the maintenance of the property. There is no evidence that the parties intended that Mrs. Williamson would be financially responsible for any repairs or improvements to the property after she conveyed it to Mrs. Upchurch. Therefore, the erection of the storage shed, like the 1986 renovations to the interior of the duplex, was Mrs. Upchurch's sole responsibility. The trial court should have required Mrs. Upchurch to account for all the rent paid for Mrs. Williamson's portion of the duplex after October, 1986 when her father moved in.

## V.

The judgment is reversed, and the case is remanded to the trial court for the calculation of the rents due Mrs. Williamson and for the entry of an appropriate judgment. Half of the costs of the appeal are taxed to Marjorie Upchurch, and the other half are taxed, jointly and severally, to Beatrice Goodwin Williamson, Michael P. Williamson, and Linda Faye Bennett for which execution, if necessary may issue.

TODD, P.J., and CANTRELL, J., concur.