# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

**December 28, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

JOHN BRANTLEY, KATHY B. )
SKINNER, ALISON BRANTLEY )
WILLIAM THOMAS MAYO and )
RICHARD MAYO, )
 )
  Plaintiffs/Appellees, )  Madison General Sessions No. 9360
 )
vs. )
 )  Appeal No. 02A01-9710-GS-00261
 )
ROBERT MAYO and KATHRYN )
MAY GILTNER, )
 )
  Defendants/Appellants. )

APPEAL FROM THE GENERAL SESSIONS COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE

THE HONORABLE WALTER BAKER HARRIS, JUDGE

For the Plaintiffs/Appellants:  For the Defendants/Appellees:

Jesse H. Ford, III   John Van den Bosch, Jr.
Jackson, Tennessee   G. William Hymers, III
      Jackson, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

## OPINION

This is a probate case. The decedent set up joint accounts with right of survivorship with her two surviving children. The surviving children were named co-executors of the decedent's estate. The trial court removed the decedent's children as co-executors of the estate and found that these accounts were assets of the decedent's estate, not joint accounts. The decedent's surviving children appeal. We find that the evidence was insufficient to support a finding of undue influence, and reverse the decision of the trial court.

Mary T. Mayo Fielding (Testatrix) died testate on May 21, 1990. Her will left one-fourth of her estate to each of her surviving children, Robert Brown Mayo ("Mayo") and Kathryn Mayo Giltner ("Giltner"), and divided the other half among the children of her two deceased children. The will was admitted to probate on June 9, 1990, and is not contested in this action. In her will, Testatrix named her two surviving children, Mayo and Giltner, defendants/Appellants, as co-executors.

This dispute arose over the status of certain accounts with J. C. Bradford & Company held by Testatrix. The accounts were set up as joint accounts with rights of survivorship, with Testatrix and the co-executors, the defendants Mayo and Giltner, as joint tenants. If the accounts were considered part of Testatrix' estate and distributed under her will, Testatrix' grandchildren would have received a portion of the funds. The Testatrix' grandchildren filed this action, challenging the status of the accounts and requesting that the defendants be removed from their positions as co-executors.

At the trial, the plaintiff grandchildren contended that Testatrix had been the victim of undue influence by defendants Mayo and Giltner. The proof at trial showed that Testatrix kept detailed records of all her affairs and managed her own business matters until she became ill in 1989. Testatrix underwent heart bypass surgery on July 19, 1989, and continued to suffer from poor physical health until her death in 1990.

Dr. James J. Diffee, Testatrix's doctor, testified as to her physical health prior to her death in May 1990. Testatrix suffered from atherosclerotic heart disease, intermittent congestive heart failure, functional bowel disease and anemia, along with other more minor problems. Dr. Diffee stated that he did not notice mental deterioration during the time he treated the Testatrix, however, his only contact with Testatrix was related to her health, and not to her business concerns. Dr. Diffee repeatedly stated that he had no knowledge of Testatrix's mental ability as related to her business affairs.

Giltner, Testatrix's daughter, testified that she usually accompanied Testatrix to her

appointments with Dr. Diffee and often contacted the doctor's office on behalf of her mother. Family members testified that Giltner and Mayo took care of such things as doctor appointments and upkeep on Testatrix' home and rental properties.

Defendant Mayo testified at trial that he moved home to Jackson, Tennessee from Birmingham, Alabama in 1984. At that time, Testatrix placed Mayo's name on her checking account so that he could "write checks for her and do what she wanted [him] to do." Testatrix held several certificates of deposit at Fidelity Federal Bank, now Union Planters Bank, in her own name. Mayo testified that, in 1989, Testatrix asked him to find an account that would bear higher interest than did her certificates of deposit. Mayo informed his mother that he maintained an account at J.C. Bradford Company that earned eight percent interest. Mayo then introduced Testatrix to Terry Nance, vice-president at J.C. Bradford, who opened two stock market accounts for Testatrix. Testatrix had never before done business with J.C. Bradford, and had never before dealt in the stock market. Although several witnesses at trial testified as to Testatrix' business acumen, more than one witness remarked that they were surprised to see Testatrix become active in the stock market at that point in her life, when she had no prior experience in that area.

Testimony at trial established how the J.C. Bradford accounts at issue were set up and funded. One account was opened in October 1989 and the other was opened in November 1989. One account was set up with Testatrix and Giltner as joint owners, and the other was set up with Testatrix and Mayo as joint owners. The J.C. Bradford employees who opened the accounts testified at trial, and could not say whether Testatrix knew what "joint ownership with rights of survivorship" meant. The J.C. Bradford employees were unsure whether Testatrix actually requested joint accounts with survivorship rights.

The trial court ruled that "the J.C. Bradford accounts are assets of the estate, and not joint accounts." The trial court did not put in its order the reason for the ruling. However, in its oral ruling, the trial court stated:

> . . . [W]ith respect to the accounts at J. C. Bradford Company, where the deceased had never done any business before, was taken out by relatives and did, in fact, create the documents with the right of survivorship. The Court does hold that those are, in fact, estate assets.

2

Mayo and Giltner now appeal this decision. On appeal, they argue that the trial court erred in its decision to include the J. C. Bradford accounts as assets of Testatrix' estate.

We review the trial court's judgment *de novo*, with a presumption of the correctness of the trial court's findings of fact. Rule 13(d) of the Tennessee Rules of Appellate Procedure.

The party seeking to invalidate a transaction because of undue influence has the burden of proof. *Williamson v. Upchurch*, 768 S.W.2d 265, 269 (Tenn. App. 1988). Tennessee case law reflects the well-settled presumption "that any transaction benefiting the dominant party in a confidential relationship is invalid where there is proof that the dominant party exercised dominion or influence over the weaker party." *Williamson*, 768 S.W.2d at 269 (citing *Gordon v. Thornton*, 584 S.W.2d 655, 658 (Tenn. App. 1979); *Roberts v. Chase*, 25 Tenn. App. 636, 651, 166 S.W.2d 641, 650-51 (1942)). "[O]nce the presumption arises, the burden shifts to the dominant party to demonstrate that the transaction is proper." *Id.* (citing *Parsley v. Harlan*, 702 S.W.2d 166, 174 (Tenn. App. 1985); *Howell v. Davis*, 43 Tenn. App. 52, 59-60, 306 S.W.2d 9, 12 (1957)). However, the party seeking to invalidate the transaction must first establish a confidential relationship.

Generally, a confidential relationship is one "which gives one party dominion or influence over the other." *Williamson*, 768 S.W.2d at 269. "[P]roof of a confidential relationship will not, by itself, give rise to the presumption of invalidity. It must be accompanied by proof tending to show that the free agency of the weaker party was destroyed and replaced by the will of the dominant party." *Id.* (citations omitted). "Evidence of one party's deteriorated mental or physical condition will substantiate the existence of a confidential relationship as well as the ability of the dominant party to influence the weaker party." *Id.*; *see Fritts v. Abbott*, 938 S.W.2d 420, 420-21 (Tenn. App. 1996). The elements of undue influence are:

> dominion and control by the stronger over the weaker, or there must be a showing of senility or physical or mental deterioration of the donor or that fraud or duress was involved, or other conditions which would tend to establish that the free agency of the donor was destroyed and the will of the donee was substituted therefor.

*Fritts v. Abbott*, 938 S.W.2d 420, 420-21 (Tenn. App. 1996) (quoting *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977)). Defendants may rebut the presumption of undue influence by proof of the fairness of the transaction, established by a preponderance of the evidence. *Reynolds v. Day*, 792 S.W.2d 924 (Tenn. App. 1990). The fairness of the transaction may be demonstrated by showing

3

that the Testatrix had independent advice during the transaction. *Crain v. Brown*, 823 S.W.2d 187, 194 (Tenn. App. 1991) (citing *Richmond v. Christian*, 555 S.W.2d 105 (Tenn. 1977)).

The question of whether a confidential relationship existed is a question of fact. *Fritts*, 938 S.W.2d at 421; *see Matlock v. Simpson*, 902 S.W.2d 384 (Tenn. 1995). No particular set of circumstances requires a finding of undue influence. Instead, "the undue influence issue should be decided by the application of sound principles and good sense to the facts of each case." *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. App. 1989) (quoting *Halle v. Summerfield*, 199 Tenn. 445, 454, 287 S.W.2d 57, 61 (1956)).

Defendants rely on a recent Tennessee Supreme Court case, *In re Nichols*, 856 S.W.2d 397 (Tenn. 1993), which involves facts similar to this case. In *Nichols*, Testatrix willed "all [her] property, real and personal[,]" to her son and her two grandchildren, in equal shares. *Nichols*, 856 S.W.2d at 398. Testatrix also purchased or renewed seven certificates of deposit prior to her death, and established those accounts in joint tenancy with right of survivorship with her son. Testatrix died, and the certificates of deposit transferred to son as sole owner. One grandchild filed suit to establish the certificates of deposit as part of the estate. The record contains testimony from the Testatrix's lawyer, who stated that Testatrix had informed him that she "wanted her estate to be divided equally between the three" beneficiaries of her will. *Id.* Testatrix also informed her lawyer that she "had instructed [son] as to what he was to do with the certificates of deposit, that they were all to be divided equally between him and the two grandchildren." *Id.* Testatrix stated that she trusted her son to do her will, even though it was not the law. *Id.*

The trial court found the certificates of deposit to be part of the estate, and was affirmed by the Court of Appeals. The Tennessee Supreme Court reversed, finding that ownership of the certificates of deposit purchased after January 1, 1989 was controlled by the provisions of Tennessee Code Annotated § 45-2-703(e)(1) (Supp. 1992), which states in pertinent part:

> A designation of "joint tenants with right of survivorship," or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor.

*Nichols*, 856 S.W.2d at 399. In this case, the accounts at issue were established after January 1, 1989; consequently, Tennessee Code Annotated § 45-2-703(e)(1) applies.

4

In this case, there was evidence from which the trial court could conclude that Testatrix placed trust and confidence in Mayo and Giltner, relying on them for such items as keeping up with appointments and taking care of her home and rental properties. There was testimony regarding Testatrix' deteriorated physical condition after her heart surgery. Witnesses testified that Testatrix had never before opened accounts such as those at J.C. Bradford and that they were surprised to see her do so.

However, the testimony of Testatrix' physician was that he noticed no mental deterioration during the time in which he treated her, from the time of her heart surgery until her death. There is no evidence that Testatrix' mental condition deteriorated to permit Mayo and Giltner to have "dominion or influence" over Testatrix. *Williamson*, 768 S.W.2d at 269. There is simply no evidence from which the trial court could conclude that Testatrix' "free agency . . . was destroyed and replaced by the will of the dominant party [Mayo and Giltner]." *Id.* Consequently, the evidence is insufficient for the trial court to find a confidential relationship that would create a presumption that any transaction benefitting Mayo and Giltner would be invalid. *See id.* Accordingly, the decision of the trial court, holding the creation of the joint accounts invalid and including the joint J. C. Bradford accounts in Testatrix' estate, must be reversed.

The decision of the trial court is reversed, and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed against Appellees, for which execution may issue if necessary.


_____
**HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**ALAN E. HIGHERS, J.**

5