IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

May 27, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| FRANK VERNON SOUTHERS, | ) C/A NO. 03A01-9802-CV-00001 |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| v. | ) SULLIVAN COUNTY LAW COURT |
| | ) |
| | ) |
| | ) |
| | ) |
| PATSY LORETTA SOUTHERS, | ) |
| | ) HONORABLE R. JERRY BECK, |
| Defendant-Appellee. | ) JUDGE |

For Appellant                    For Appellee

JOHN S. BINGHAM                  DAVID S. HAYNES
Hawkins, Moody, Bingham,         Bristol, Tennessee
  Miller, P.C.
Kingsport, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                          Susano, J.

This is a post-divorce case. The trial court set aside that portion of the parties' judgment of divorce dealing with the issue of periodic alimony. It then entered a new decree again establishing Frank Vernon Southers' ("Husband") periodic alimony obligation at $2,000 per month, but decreeing new terms as to when his obligation would terminate. In a subsequent order, the trial court decreed that Husband should reimburse Patsy Loretta Southers ("Wife") the sum of $6,255.44 for medical insurance premiums previously paid by her. The second order further directs that Husband pay Wife's premiums *in futuro* until May 12, 1998.[1] Husband appeals from these orders, raising four issues for our consideration:

> 1. Does a confidential relationship exist between married parties after they have separated and while they are engaged in divorce proceedings?
>
> 2. Did the trial court abuse its discretion in setting aside a divorce judgment on the ground of constructive fraud where the party in whose favor the relief was granted had not filed a motion pursuant to Rule 60.02, Tenn.R.Civ.P.?
>
> 3. Did the trial court err in permitting Wife to introduce a doctor's medical record which recounts a conversation prior to the parties' divorce between Husband and his physician regarding Husband's desire "to apply for social security disability"?
>
> 4. Did the trial court, in reimposing an alimony obligation on Husband, fail to properly consider the relevant factors found at T.C.A. § 36-5-101(d)(1)(A)-(L)?

---

[1]In doing so, the trial court, without saying so, actually set aside or modified a provision of the divorce judgment of May 12, 1995, which provides that Husband pay Wife's medical insurance premiums "for three years or *until retirement or death*." (Emphasis added).

I.


The parties' divorce judgment, entered May 12, 1995, dissolved a marriage of over 38 years. Wife was then 57 years old and Husband was 61. The parties did not have minor children.


The divorce judgment was entered pursuant to the parties' oral agreement on economic issues and their stipulation that Wife was entitled to a divorce on the ground of inappropriate marital conduct. Both parties were represented by counsel. The divorce judgment specifies, in some detail, each asset of the marital estate, its value, and the party to whom it was awarded. Wife received marital assets valued at $520,969, and Husband was awarded marital assets with a total value of $296,477.61. As a part of the division of the marital estate, and included in the figures previously stated, each of the parties received "50% short term retirement" and "50% long term retirement." Under the heading of "Alimony," the judgment provides as follows:

> Husband's income is $6,233/mo. after taxes. Husband will pay Wife $2000.00 per month *until his retirement or death*. Husband will pay for Wive's [sic] health care insurance *for three years or until retirement or death*, under COBRA. First payment due May 4, 1995 and 4th of each month thereafter until after the 4th of the month of Husband's retirement. Husband will apply each 18 months for Wive's [sic] COBRA rights.

(Emphasis added).

3

Husband was a State Farm Insurance agent.  He terminated his employment with State Farm effective December 31, 1995, having elected to retire because of a disability associated with a heart condition.  As a result of his disability retirement, Husband receives a monthly Social Security check of $985 and a monthly disability check of $5,200.  His retirement triggered State Farm's five year payout for the assets of his agency -- referred to in the divorce judgment as "short term retirement."  Effective as of Husband's retirement, both he and Wife started receiving a monthly check of $1,239.07 -- payments that will terminate in 60 months.  At the conclusion of this period, State Farm will commence its "long term retirement" payments, which are also being equally split between the parties pursuant to the terms of their divorce judgment.  The "long term retirement" payments continue until Husband's death.

Husband refused to pay alimony after December, 1995. He made his last medical insurance premium payment for Wife in January, 1996.  His position was, and still is, that his obligation to pay periodic alimony and Wife's medical insurance premiums terminated upon his retirement and, according to him, his disability constitutes retirement as contemplated by the divorce judgment.

On February 19, 1996 -- some nine months after the divorce judgment was entered --  Wife filed a pleading entitled "Petition to Enhance Alimony as to Duration and Amount."  The petition alleges that "[i]t was contemplated that retirement would reduce the husband's income, therefore, his ability to pay

4

alimony." Instead, so the petition correctly alleges, Husband's disability retirement increased his income. According to the petition,

> [t]he retirement of the husband without disability was contemplated and it was thought that this would reduce his ability to pay. This was contemplated, and provided for, in the judgment of May, 1995. The work stoppage due to disability, enhancing the husband's ability to pay, was not contemplated.

Following a bench trial on Wife's petition, the trial court found that Husband had failed to disclose to Wife that he was seriously considering disability retirement prior to the time that the parties finally negotiated the settlement of the economic issues in their divorce; that a confidential relationship existed between the parties during their negotiations and up to the time of their divorce; that this confidential relationship gave rise to Husband's fiduciary duty to disclose this contemplated-retirement information to Wife; and that Husband's failure to do so was a violation of his fiduciary duty to his then-spouse. Accordingly, the trial court set aside the alimony/medical insurance portions of the divorce judgment on the basis of "constructive fraud," and, in two separate decrees, ordered as follows:

> That [Husband's] alimony obligation shall be fixed in the amount of Two Thousand Dollars ($2,000.00) per month and the same shall be due and payable from and after February, 1996. [Husband's] alimony obligation shall terminate when [Husband's] disability pay from the State Farm plan with CIGNA ceases or at his death whichever first occurs.

5

                    *    *    *

> [Husband] is ORDERED to pay to [Wife], in
> addition to the sums heretofore ordered and
> adjudged in the prior Order, the sum of
> $6,255.44, which is reimbursement for medical
> insurance premiums at $399.44 per month for
> 1996 and $232.70 per month for 1997,
> calculated as $6,255.44 through August, 1997.
> After August, 1997 the amount shall continue
> to be $232.70 per month through 1997, and
> thereafter, beginning in January, 1998, such
> amount that will purchase the same coverage
> that was purchased for $399.44 per month in
> 1996.  The premiums shall be due and payable
> from [Husband] to [Wife] for her medical
> insurance premium reimbursement until May 12,
> 1998.


                         II.


     In finding a confidential relationship between the

parties, the trial court relied, at least in part, on the

decision of this court in the case of **Howell v. Davis**, 306 S.W.2d

9 (Tenn.App. 1957).  In **Howell**, this court found that a woman's

spouse, who was dead at the time of trial, had fraudulently

induced her to sign a deed.  In finding that the transfer was

voidable upon application of the defrauded wife, the court stated

as follows:


> In view of the marital relationship and the
> fact that Mr. Howell was the more dominant
> personality and managed the business affairs
> of the family; that he selected the attorney
> and was the moving influence in the execution
> of the deed which was greatly to the
> disadvantage of Mrs. Howell, *we think a
> confidential relationship existed between
> them* and that the burden of proof rested upon
> his heirs at law to show that, in executing
> the deed of 1941, Mrs. Howell was fully and
> correctly advised of the purpose and effect
> of the deed and that there is a presumption
> that the deed was fraudulently obtained.

6

> "The relation of husband and wife has been
> regarded as one of special confidence and
> trust, and in contracting with each other
> they must exercise the utmost good faith.
> The court will closely scrutinize all
> transactions between them to the end that
> injustice and oppression may not result."

*Id*. at 12. (Emphasis added). The trial court in the instant

case also cited as persuasive authority this court's opinion in

*Lightman v. Magid*, 394 S.W.2d 151 (Tenn.App. 1965), which stands

for the principle

> [t]hat a confidential relationship exists
> between a prospective husband and wife who
> execute an antenuptial agreement while they
> are engaged to be married which requires the
> utmost good faith and full disclosure of all
> circumstances materially bearing on the
> contemplated contract.

*Id*. at 156. The trial court in the instant case rationalized

that if parties negotiating a prenuptial agreement stand in a

confidential relationship with one another, then such a

relationship must exist between these parties who were married.

Husband takes the position that "[t]o hold that a

confidential or fiduciary relationship exist[s] between estranged

spouses in a divorce action who are negotiating a settlement

through their attorneys does not reflect reality." In this case,

we agree with Husband's position; but we do not agree that this

requires a reversal of the trial court's most recent orders.

In the instant case, the parties had been separated for

over 17 months before the divorce was granted; each had sued the

other for divorce; and each was represented by counsel.  There is nothing in the record to indicate that they had personally negotiated any aspect of the settlement of the economic issues in this case.  On the contrary, all negotiations appear to have been undertaken through counsel and the parties apparently did not even talk to one another after their separation.  There is nothing about the relationship between these separated, divorcing, represented-by-counsel parties to suggest that their relationship -- contentious as it then obviously was -- falls within one of the "three distinct classes" giving rise to a duty to disclose.  *See Justice v. Anderson County,* 955 S.W.2d 613, 616-17 (Tenn.App. 1997).  This case is not like *Howell.*  In that case, the court was dealing with a transaction between spouses during an *intact* marriage.  Here, the parties were married in name only, and they were clearly dealing at arms' length, through counsel, with absolutely no trust or confidence reposed by one in the other.

It is important to recognize what this case does *not* involve.  There are no allegations or proof in the record that Husband made an affirmative misrepresentation.  He apparently was not asked in discovery regarding whether his health condition -- about which Wife had some, but incomplete, information -- had prompted him to consider early disability retirement.  This is also not a case where a party hides the existence of a marital asset or otherwise makes an affirmative misrepresentation regarding a marital asset -- one that amounts to an act of fraud.  Obviously, an act of fraud can be the basis for setting aside a

8

negotiated marital dissolution agreement.  *See* Rule 60.02(2), Tenn.R.Civ.P.

We know of no Tennessee appellate case authority deciding whether, and to what extent, a confidential relationship giving rise to a duty to disclose -- as distinguished from a duty not to engage in an affirmative misrepresentation or a duty not to hide marital assets -- exists as between divorcing parties. Other states have recognized such a duty under some circumstances.  *See* ***Avriett v. Avriett***, 363 S.E.2d 875, 877 (N.C.App. 1988) (holding that the "confidential relationship that usually exists between husband and wife" terminated when they "become adversaries" in the course of negotiating a divorce settlement); ***Eltzroth and Eltzroth***, 679 P.2d 1369, 1372 (Or.App. 1984) ("Because the fiduciary duty is imposed as a result of the confidential relationship between the parties, it continues while the parties contemplate divorce, as long as the confidential relationship remains intact and the parties are not dealing at arms' length through separate agents or attorneys."); ***Gabbert v. Johnson***, 632 P.2d 443, 446 (Okla.App. 1981) ("Both parties were represented by able counsel.  Once she filed her action, the woman no longer enjoyed a confidential relationship with her husband.  He did not have to voluntarily disclose anything."); ***Jeffries v. Jeffries***, 434 N.W.2d 585, 587-88 (S.D. 1989) ("While it is generally true that a husband and wife do enjoy a confidential relationship,...we do not believe that such a relationship existed here.  When the parties to a marriage are negotiating a property settlement, recognizing that their interests are adverse to one another and that they are dealing at

9

arms [sic] length, neither spouse owes to the other the duty of disclosure which he or she would normally owe if their relationship remained, in fact, a confidential one."). *Cf. McDonald v. Barlow*, 705 P.2d 1056, 1060 (Idaho App. 1985) ("Throughout the property settlement negotiations, the relationship between McDonald and Barlow was that of husband and wife. The fiduciary duty arising from that relationship was not affected by the parties' separation."). In the instant case, we do not find it necessary to define, by way of a bright-line rule, when the confidential relationship recognized in *Howell* terminates in the context of a divorce. Suffice it to say that it had clearly terminated in this case.

While we disagree with the reason advanced by the trial court to justify his judgment in this case, this does not close our inquiry. On a *de novo* review, such as the one in which we are now engaged, we are "called upon to pass upon the correctness of the result reached in the [t]rial [c]ourt, not necessarily the reasoning employed to reach the result." *Shelter Insurance Companies v. Hann*, 921 S.W.2d 194, 202 (Tenn.App. 1995). In the instant case, we agree with the result reached by the trial court, *i.e.*, the extension of Husband's alimony obligation until his monthly disability payments stop or he dies, whichever of the two events occurs first. We also agree with the trial court decision to require Husband to pay for Wife's medical insurance premiums until May 12, 1998.

In a post-divorce proceeding, a court has the power to "decree an increase or decrease of [an award of spousal support]

only upon a showing of a substantial and material change of circumstances." T.C.A. § 36-5-101(a)(1). Unless and until a petitioning party demonstrates a "substantial and material change of circumstances," the existing award of spousal support is *res judicata*. **Hicks v. Hicks**, 176 S.W.2d 371, 374-75 (Tenn.App. 1943).

"Under T.C.A. § 36-5-101(a)(1), it is clear that the ordinary decree for support remains within the control of the Court and is subject to modification." **Anderson v. Anderson**, 810 S.W.2d 153, 154 (Tenn.App. 1991).

Husband argues that the trial court did not have the power to change the alimony/insurance provisions because there was no longer an obligation to pay periodic alimony or provide for Wife's medical insurance premiums. He contends that he had fully satisfied his periodic alimony/insurance obligations before Wife filed her petition. We disagree with Husband's analysis. T.C.A. § 36-5-101(a)(1) gives a court the power to modify a periodic alimony *in futuro* decree. That statute does not limit a court's right to modify to those situations where the previous periodic alimony obligation has not been fully satisfied according to its terms.[2] We are not aware of any authority for the proposition advanced by Husband. Furthermore, we think his argument is at odds with the broadly-stated right to modify set forth in T.C.A. § 36-5-101(a)(1).

---

[2]By contrast, "rehabilitative, temporary support and maintenance" stays within the control of the court "for the duration of such award." T.C.A. § 36-5-101(d)(2).

11

In the instant case, it is clear that the parties contemplated a retirement by Husband that would result in a decrease in his income -- the usual situation in the typical retirement. Instead, Husband's disability retirement resulted in substantial income not contemplated at the time of the divorce judgment -- a monthly disability payment of $5,200. While Husband's present *net* income is not shown in the record, it is clear that his present *gross* income is $7,424.07. This compares with a monthly net of $6,233, the amount upon which the alimony award of $2,000 per month was originally based. We find that the circumstances of the parties had changed in a substantial and material way, justifying the action of the trial court. Thus, even though we disagree with the trial court's decision to set aside the original alimony/insurance decrees because of fraud, we agree that the court was justified in the changes decreed by it based upon a substantial and material change in the parties' circumstances.

III.

Husband argues that the trial court should not have admitted into evidence a record from the office of Dr. Jerry L. Miller containing the following statement regarding the doctor's conversation with Husband on April 21, 1995, some 21 days before the parties' divorce:

> Patient and I had a lengthy discussion about
> his retirement and he wants to apply for
> social security disability. I encouraged him
> to do so and he will apply.

The stated basis for Husband's objection at trial was that Wife had failed to call the records custodian to authenticate the proffered document. In fact, the record is clear that the document in question was furnished by Husband's counsel in response to a request to produce documents. In furnishing this document, without qualification, in response to a request for Husband's medical records, Husband, in effect, authenticated the document.

To the extent that Husband now poses *additional*[3] reasons why the document was not admissible, those grounds were waived when they were not raised at the time the document was offered as evidence by Wife. *See* NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE § 103.3 (3d ed. 1995). In any event, and even assuming for the purpose of discussion that the trial court erred in admitting the challenged document, we do not find that the trial court's ruling amounts to an "error involving a substantial right [that] more probably than not affected the judgment or would result in prejudice to the judicial process." *See* Rule 36(b), T.R.A.P. This is because we have resolved in Husband's favor the issue, *i.e.*, violation of a fiduciary duty, upon which the document was offered and received into evidence.

IV.

Finally, Husband argues that the evidence preponderates against the trial court's determination that Wife needs $2,000 of

_____

[3]Husband argues that Wife did not prove each of the elements set forth in Rule 803(6), Tenn.R.Evid.

13

alimony.  We disagree.  Wife testified to her needs, and it is obvious that the trial court believed her testimony.  The issue of credibility was for the trial court.  ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn.App. 1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn.App. 1991).  We find no error in the award on this basis.

V.


The judgment of the trial court is affirmed. This case is remanded to the trial court for such further proceedings as may be required, if any, consistent with this opinion, and for collection of costs assessed below, all pursuant to applicable law.


_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.