Argued and submitted December 13, reversed and remanded with instructions to set aside the property provisions of the decree; affirmed in all other respects April 4, 1984

In the Matter of the Marriage of

ELTZROTH,
*Appellant,*
*and*
ELTZROTH,
*Respondent.*

(D8105-63923; CA A28919)

679 P2d 1369

Richard G. Helzer, Portland, argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

### WARREN, J.

Wife appeals the trial court's denial of a motion made pursuant to ORCP 71B(1)(c) to set aside a decree of divorce and the incorporated property settlement agreement on the grounds of breach of fiduciary duty and misrepresentation. We reverse as to the property provisions of the decree and otherwise affirm.

■     The parties were married in 1962 and had two children. In the spring of 1981, they began discussing the terms of a divorce and retained a single attorney to represent them both. They met with the attorney several times, and on September 28, 1981, they signed the Marital Settlement Agreement.[1] The parties appeared in court on October 8, 1981,

---

[1] The Marital Settlement Agreement provided, in pertinent part:

"I

"The parties shall share jointly the care and custody of the minor children HAL EDWARD ELTZROTH, III, born 18 January 1967, aged 14, and KAREN ELAINE ELTZROTH, born 10 August 1968, aged 12. No support for the children shall be paid between the parties unless ordered by the Court.

"II

"Husband shall make all payments for upkeep of the family home, including mortgage, taxes, insurance, utilities, and maintenance, and shall provide automobile insurance, gasoline, and maintenance for Wife's automobile, and major medical insurance coverage for Wife, as long as Wife resides full-time in the family home. However, when Wife obtains employment, she shall make reasonable contributions for these expenses.

"Wife agrees to use due diligence to obtain gainful employment at earliest opportunity. In no event shall Husband be directly responsible for these expenses for more than 5 years from date of Decree.

"Either party may move from the family home at any time, subject to the following:

"1) If Husband moves, he shall continue payments for the house, Wife's transportation, support (paragraph III), and medical insurance if Wife is unable to make said payments. Husband shall make a reasonable contribution to support of the children if the children remain with Wife.

"2) If Wife moves, she shall assume full financial responsibility for herself. Husband shall continue to pay house expenses if he continues residence in the house, and shall make a reasonable contribution to support of the children if the children move with the Wife.

"III

"Husband shall pay for support of Wife, the sum of $50. per month until Wife dies, remarries, or moves from the family home or until further order of the Court.

when a decree of dissolution incorporating the property settlement agreement was signed by the judge.[2] The parties continued to live together in the family home throughout the negotiations and after the decree was signed.

---

"IV

"Property shall be divided as follows:

"The parties shall own the family residence, known as 7395 S.W. Miller Hill Rd., and legally described as:
  "* * * * *

"as tenants-in-common. When Wife becomes self-supporting, the resident(s) of the home shall pay mortgage, taxes, insurance, and maintenance as set-off for one-half fair rental value otherwise owed to non-resident. The parties do not intend to alter statutory partition rights by this agreement.

"Husband shall have as his sole and separate property his interest in his business, MEDOFF-ELTZROTH, a partnership.

"Wife shall have as her sole and separate property the 1973 Ford LTD automobile owned by Husband's business, the stereo, the coffee table, end tables, lamps, sewing machine, personal items, and chairs in living room, and the real property known as 6131 N.W. Thompson Road, Portland, Oregon, ownership of which is in litigation, if MEDOFF-ELTZROTH acquires property in litigation. Wife agrees to compensate the partnership for improvements and legal expenses, if she acquires the property.

"Husband shall have his bottle collection, family china and personal items. Furnishings shall remain in the home for the benefit of the children, but shall be divided among the parties in equal shares should both parties move from the home.

"V

"The parties acknowledge that the desires of the children shall be given first consideration in any determination of custody and visitation or personal plans of the parties.

"VI

"The parties acknowledge that each has been advised to obtain advice from independent legal counsel of his/her choice.

"VII

"This agreement shall be presented to the Court with the request that it be incorporated in Decree of Dissolution of Marriage at first available opportunity. This agreement shall have full effect to transfer interest in property described herein.
  "* * * * *"

---

[2] In our view, several inequities in the provisions for spousal support and property division appear on the face of the agreement. Although a court may approve and ratify an agreement by incorporating it into the decree without applying an analysis of the statutory factors set out in ORS 107.105(1)(c), *McDonnal and McDonnal,* 293 Or 772, 652 P2d 1247 (1982), it may and should reject an agreement made in anticipation of a dissolution when it is inequitable on its face. *Bach and Bach,* 27 Or App 411, 555 P2d 1264 (1976).

Wife now seeks to set aside the decree and the property settlement agreement. She claims that husband breached his fiduciary duty to make a full and fair disclosure of marital assets and made intentional misstatements respecting their financial condition on which she relied when she agreed to the settlement. Husband filed no brief in response.

Throughout the marriage, husband worked in the family excavation business, a partnership known as Medoff & Eltzroth. Wife worked as a homemaker. At the hearing on the motion, wife testified that, during the spring of 1981, when the parties were discussing a divorce, husband told her that the family business was virtually bankrupt, that there was no money to obtain separate legal representation without having to sell the family home to pay for it[3] and that she had no reason to believe otherwise and relied on husband's representations throughout the negotiations. The attorney professing to represent both parties in the negotiations testified that, during her meetings with both parties, wife brought up the subject of the family business several times and that husband in response represented that the business had insignificant value.[4]

At the hearing, wife's expert witness, relying on the parties' 1981 federal income tax return and the partnership's

---

[3] Husband's testimony at the hearing supports wife's testimony:

"* * * [A]nd it's my personal opinion, when you have two attorneys, as they work one against the other, and pretty quick the house is sold to pay the attorneys or — what? Vice versa or however that happens."

[4] The attorney testified:

"Q. Were you ever aware of the value of the partnership interest at the time you represented the parties?

"A. No, I was not.

"Q. What was told to you by Mr. Eltzroth about the value of the business?

"A. Two things were basically represented to me. One was that it had an insignificant value. The second was that, if this was to be a matter of negotiation in the divorce proceeding, the parties would have to seek separate counsel.

"He would not agree to pursue that matter.

"THE COURT: What brought that subject up?

"THE WITNESS: Mrs. Eltzroth brought it up several times.

"THE COURT: Did she want or think she was entitled to some interest in the business?

"THE WITNESS: Yes, she did."

1981 tax return, testified that the parties' income from the family business in 1981 was $72,506, that the partnership had gross sales of $719,000 and that husband's capital balance on his partnership return as of December 31, 1981, was $108,857, representing 70 percent of the total partnership interest.

The general rule in Oregon defining when a fiduciary relationship will be held to exist is stated in *Starkweather v. Shaffer,* 262 Or 198, 205, 497 P2d 358 (1972):

> "A fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence. *Patterson v. Getz,* 166 Or 245, 287, 111 P2d 842 (1941)."

Oregon courts have long recognized that a husband and wife do not deal at arms' length and have imposed a fiduciary duty of the highest degree in transactions between them. *Hodes v. Hodes,* 173 Or 267, 273, 145 P2d 299 (1944).[5] Because the fiduciary duty is imposed as a result of the confidential relationship between the parties, it continues while the parties contemplate divorce, as long as the confidential relationship remains intact and the parties are not dealing at arms' length through separate agents or attorneys. In *Vai v. Bank of America National Trust & Savings Ass'n,* 56 Cal2d 329, 15 Cal Rptr 71, 364 P2d 247 (1961), the California Supreme Court fully examined this issue and found that a fiduciary duty to disclose community property[6] when negotiating a property settlement can arise from either the confidential relationship between husband and wife or from control by one person over the property of another. The evidence in this case is undisputed that husband had sole control over the family business, but we need not rely on that fact, because we find that the confidential relationship between the parties continued throughout the negotiations and after the decree was signed.

[5] We recognized the fiduciary duty to disclose assets between parties contemplating marriage as recently as *Knoll and Knoll,* 65 Or App 484, 487, 671 P2d 718 (1983). Although the facts here differ, the legal principle remains the same, as long as the confidential relationship between the parties continues.

[6] Although we recognize that community property law often differs from Oregon law, we see no reason for a different rule in this context. It is entirely consistent with the requirement that a property division be "just and equitable," ORS 107.105(1)(f), that the parties be obliged to make a full and fair disclosure of marital assets, as long as the confidential relationship exists.

██ The record shows that the parties were not negotiating a property settlement with a recognition that their interests were adverse or dealing at arms' length. They continued to live together in the family home with their two children through the entire time. Wife continued to rely on husband's statements regarding the parties' resources, his future intention to support her and their children and their inability to afford separate counsel. The attorney hired to represent them acted only as a scrivener and could not and did not provide independent advice to either party.[7] Under these circumstances, their confidential relationship continued. Husband had a duty to deal with his wife fairly and to make a full and frank disclosure of all circumstances materially bearing on the contemplated agreement, including a full disclosure of marital assets. When wife asked husband the value of the family business, husband had a duty to answer accurately and honestly.

██ When a breach of fiduciary duty, misconduct or overreaching occurs in the entry of a decree incorporating a property settlement agreement, the aggrieved party can directly attack the decree under ORCP 71B(1)(c). *See Black v. Black,* 274 Or 359, 364, 546 P2d 1074 (1976); *Harder and Harder,* 49 Or App 582, 584, 619 P2d 1367, *rev den* 290 Or 551 (1981). Although the law favors finality of judgments, we do not value that objective enough to allow a party to profit from misrepresentations of the kind here. In this case, husband portrayed a failing, valueless business to wife and their attorney. The record shows that husband's representation was not accurate and truthful. Those statements violated his fiduciary obligation to make a full and fair disclosure of the parties' assets and offend basic contract principles against enforcing agreements made in reliance on intentional misstatements. Under the circumstances, the agreement must be set aside.

Reversed and remanded with instructions to set aside the property provisions of the decree; affirmed in all other respects. Costs to appellant.

---

[7] We do not condone the conduct of the attorney in continuing to represent both parties in this case. Canon 5 of the Oregon Code of Professional Responsibility allows an attorney to represent co-petitioners in a divorce action only in very limited circumstances. *See* Legal Ethics Opinion No. 218. When the proposed "agreement" between the parties presents obvious inequities on its face and raises questions and conflicts over the disposition of a substantial marital asset, it is the clear duty of the attorney to withdraw and advise the parties to seek independent counsel.