Argued and submitted February 10, remanded in part; otherwise affirmed
August 9, 1995

In the Matter of the Marriage of

Judy Carol BOWERS,
*Respondent,*

*and*

Gary Elwyn BOWERS,
*Appellant.*

(92-DO-0456-ST; CA A84593)

900 P2d 1085

Linda Reed Haase argued the cause and filed the brief for appellant.

Gerald Martin argued the cause for respondent. With him on the brief was Francis & Martin.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Husband appeals a dissolution judgment, assigning error to the trial court's distribution of marital property. He argues that the court failed to give proper effect to an antenuptial agreement and, as a consequence, that it improperly characterized some corporate assets as marital property. On *de novo* review, we modify the judgment.

The parties were married in March 1988 and separated in July 1992. Before their marriage, they entered into an antenuptial agreement that provided, in part:

"5. **Separate Income.** It is specifically agreed that the income of each party be and shall remain their own and separate property free of any claim of the other and shall not be awarded to nor become the property of the other.

"6. **Marital Income.** Any funds that are earned jointly or deposited into a joint account shall become marital income and are not subject to the terms of this agreement and shall be marital income. Provided however, the deposit of funds into any joint account shall have been freely and voluntarily made by the original owner of the funds. Any deposit without evidence of free and voluntary deposit shall be conclusively deemed as not being marital income and shall belong to the original owner.

"* * * * *

"8. **Disposition of Property.** It is the specific intent that the property identified as being the sole and separate property of one party shall remain as sole and separate property, free of any claim of the other, regardless whether the marriage of the parties is terminated by death of a party, dissolution, annulment [*sic*], separation or other event. The property identified as separate and belonging to each party is mentioned hereinafter.

"9. **[Husband's] Separate Property.** The following real and personal [property] is that which [husband] owned prior to the marriage and which shall remain as [husband's] sole and separate property free of any claim of [wife] and more fully [described] herein, to-wit:

"* * * * *

"(b) **[Husband's] Separate Personal Property.**

"(1)  100 percent of stock in G & K Bowers, Inc.

"(2)  50 percent of stock in 2[-]B Logging, Inc.

"'\* \* \* \* \*

"(8)   Tools

"'\* \* \* \* \*

"(13)   The vehicles used and driven by [husband] are owned by G & K Bowers, Inc. and 2-B Logging, Inc."

The name of husband's corporation, G & K Bowers, Inc., was changed to Black Canyon, Ltd., shortly after the parties were married. After the parties married, husband sold his interest in 2-B Logging and, with the proceeds, purchased a log loader and log trailer to which Black Canyon holds title.

During most of the parties' marriage, wife held a full-time job. She also worked 10 to 30 hours a week for Black Canyon, handling the corporation's internal bookkeeping. In order to facilitate its business dealings, the corporation issued to wife one share of stock and made her a signatory on the corporate bank accounts. Husband owned all remaining shares of the corporate stock.

Each month, the parties deposited some monies from the corporation into their joint personal checking and savings accounts. Wife testified that, on average, the deposits totaled four to five thousand dollars per month.[1] The parties also paid some personal expenses, including their home mortgage, out of corporate accounts. All of their vehicles, including those used primarily for personal purposes, were titled to Black Canyon.

In the dissolution proceeding, the trial court held that the antenuptial agreement was valid and enforceable and had not been rescinded or canceled. In reaching its decision on the distribution of marital assets, however, the court determined that wife's work for the corporation had contributed to the conservation of corporate assets and, as a result, that strict enforcement of the agreement would be "inequitable." Accordingly, the court considered as marital property assets to which the corporation held title. The court

---

[1] Black Canyon's accountant testified that husband took a salary of only $600 per month and wife took no salary. Wife agreed that, on paper, husband's salary was only $600 per month. However, she stated that when checks were written to Black Canyon, only part of the money was deposited into Black Canyon's accounts, while the balance was deposited directly into the parties' personal accounts.

awarded wife property worth $4,510, and awarded husband property and liabilities worth a net value of $70,634. The court divided the difference in half and entered a $33,062 judgment in favor of wife to equalize the property distribution.

On appeal, husband argues that the value of certain assets that belong to Black Canyon should not have been treated as marital property subject to division. Husband asserts that the Black Canyon assets that the trial court improperly included in the property division are: (1) a Ford pickup truck, (2) a log loader, (3) a log trailer, (4) a log truck, (5) tools, and (6) a Mercury Cougar automobile.[2] He argues that the trial court erred by refusing strictly to enforce the terms of the antenuptial agreement.

Wife argues that she was closely involved in the corporation and that she did not receive any payment for her service to the corporation. She further argues that the parties' conduct during the marriage demonstrates an intent to rescind the agreement and that the court properly considered corporate assets to be marital property.[3] She claims that *Leathers and Leathers*, 98 Or App 152, 779 P2d 619, *rev den* 309 Or 625 (1990), supports the trial court's decision to treat corporate assets as marital property.

The parties in *Leathers* were married for 22 years. Before the marriage, they had signed an antenuptial agreement that provided, in part, that the wife waived all rights to property owned by the husband at the time of the marriage. At that time, the husband operated a sole proprietorship named Leathers Oil Company. After the marriage, the wife

---

[2] The trial court determined the fair market value of the listed items. It then determined that husband should receive one-half the value of the items "free and clear" of any claim by wife, pursuant to the antenuptial agreement, and that the other half of the value should be considered marital property and divided evenly. The value taken into consideration as marital property awarded to husband for purposes of the property division was (1) $5,000 for the pickup truck, (2) $9,000 for the log loader, (3) $5,000 for the log trailer, (4) $10,000 for the log truck, (5) $2,500 for tools, and (6) $1,500 for the Cougar automobile.

[3] Wife argues that the fact that she worked a substantial number of hours for the corporation, that she was issued a share of stock, and that she was made a signatory on the corporate accounts demonstrates that the parties intended the corporation to be marital property notwithstanding the contrary terms of the antenuptial agreement.

worked full time for the husband's business. Four years after they were married, the parties changed the registration for the assumed business name for Leathers Oil Company to identify the company as a proprietorship of husband and wife, rather than as a sole proprietorship of husband. The parties bought in both their names virtually all the property held by the company. The husband and the company's employees considered the wife to be the head of the company when the husband was away on business. The company expanded greatly during the parties' marriage, increasing its net worth from $430,000 at the date of marriage to more than $12 million at the time of dissolution. Given those facts, we determined that the parties had operated the business as a partnership for 22 years, and that the antenuptial agreement, by its terms, did not apply to wife's interest in the partnership.

■ Wife's involvement in husband's business in this case does not approach the degree of the wife's involvement in *Leathers*. The parties were married for only four years. Even when he changed the corporation's name, husband never changed any corporate documents to make wife an equal partner. None of the property of the corporation was purchased in wife's name. Also, wife worked full time at another job in addition to her work on behalf of the corporation. The evidence simply is insufficient to establish that the parties agreed to modify the antenuptial agreement or otherwise to treat the corporation as joint property.

Although wife argues that she was not compensated for her work for the corporation, her testimony shows that the parties deposited four to five thousand dollars per month from corporate earnings into their personal joint accounts. Husband concedes that, once money was deposited in the parties' joint accounts, it became marital income under the antenuptial agreement. Wife enjoyed the benefit of that money during the course of the marriage. Thus, she was, in effect, compensated for her work for the corporation.

■ We agree with the trial court's determination that the antenuptial agreement was valid, and that the agreement was not modified by the parties during the marriage. Therefore, on *de novo* review, we conclude that husband is entitled to have the terms of the antenuptial agreement enforced.

Accordingly, the trial court erred in considering certain corporate assets as marital property subject to division. The log loader, log trailer, log truck, pickup truck and tools belonged solely to the corporation. The Cougar automobile was titled to the corporation and paid for through corporate accounts. The parties' practice of paying personal bills from the corporate accounts demonstrates, however, that not all property paid for by the corporation was intended for business use. Both parties testified that wife drove the Cougar automobile almost exclusively for her personal use. We find that the Cougar automobile was not a "vehicle[] used and driven by [husband]," which, under the agreement, is to be treated as husband's separate property. Accordingly, the Cougar is marital property subject to division between the parties.

In sum, we find that the court erred by including corporate assets valued at $31,500 in the marital property that was subject to division. After segregating the corporate assets from the marital assets, the adjusted value of the marital property awarded to husband is $39,136, which results in a $34,624 disparity between the parties. Wife should be awarded a $17,312 offset to correct that disparity, rather than the $33,062 offset included in the judgment.

■ Husband argues that the trial court erred in denying his request for child support. After the parties separated, wife's son lived with husband for a number of months. Husband claims that he is entitled to receive reimbursement for money he expended to support wife's son during that time. He bases that claim on a section of the antenuptial agreement, which provides that the parties "shall not be responsible for the support of the stepchildren." Husband's claim lacks merit. Husband voluntarily assumed the duty of caring for wife's son. The antenuptial agreement provides no basis for the recovery of monies voluntarily spent on the children during the marriage.

On appeal, husband argues that he was entitled to an award of attorney fees at trial, based on the parties' antenuptial agreement, which provides that in "any suit, action or other proceeding" involving the agreement, the "prevailing party" shall be entitled to recover reasonable attorney fees. We do not address husband's claim, however, because he did not allege any facts about the antenuptial agreement as a

basis for recovering attorney fees in a pleading filed below, as required by ORCP 68 C(2)(a).

ORCP 68 C(2)(a) provides, in pertinent part:

"A party seeking attorney fees shall allege the facts, statute, or rule which provides a basis for the award of such fees in a pleading filed by that party. * * * No attorney fees shall be awarded unless a right to recover such fee is alleged as provided in this subsection."

In his amended response and cross-petition, husband requested that "the property and debts of the parties be distributed in accordance with the pre-marital agreement of the parties." He requested, however, that wife be required to pay his reasonable attorney fees, "pursuant to ORS 107.105(1)(i)." Nothing in the record suggests that husband amended his response to seek attorney fees based on the antenuptial agreement. Rather, in his trial memorandum, husband argued that an award of attorney fees "is discretionary with the court." That is true of an award under ORS 107.105(1)(i). No pleading filed by husband alleges any facts, rule or statute that would form the basis of a claim for fees under the antenuptial agreement.

Remanded for entry of modified judgment awarding wife a judgment of $17,312 against husband; otherwise affirmed. No costs to either party.