On appellant's motion for reconsideration filed August 18, 1995, reconsideration allowed; opinion (136 Or App 112, 900 P2d 1085 (1995)) modified; remanded for award of attorney fees; opinion adhered to as modified August 28, 1996

In the Matter of the Marriage of

Judy Carol BOWERS,
*Respondent,*

*and*

Gary Elwyn BOWERS,
*Appellant.*

(92-DO-0456-ST; CA A84593)

922 P2d 722

In Banc

Linda Reed Haase for the motion.

No appearance *contra.*

WARREN, J.

Armstrong, J., dissenting.

## WARREN, J.

Husband moves for reconsideration of our decision, *Bowers and Bowers*, 136 Or App 112, 900 P2d 1085 (1995), claiming that we made a factual error in disposing of his claim for attorney fees. We allow the motion and modify our opinion to remand to award husband attorney fees.

In our opinion, we stated:

"In his amended response and cross-petition, husband requested that 'the property and debts of the parties be distributed in accordance with the pre-marital agreement of the parties.' He requested, however, that wife be required to pay his reasonable attorney fees, 'pursuant to ORS 107.105(1)(i).' * * * No pleading filed by husband alleges any facts, rule or statute that relate to a claim for fees under the antenuptial agreement." 136 Or App at 119.

Husband contends that he orally moved at the beginning of trial to amend his response to seek attorney fees under the antenuptial agreement, and that the trial court allowed the amendment. Husband is correct. Accordingly, we consider whether the trial court erred in holding that husband was not a prevailing party under the agreement and was not entitled to attorney fees.[1] We conclude that he is entitled to fees under the antenuptial agreement.

The dissent, however, cites *Haguewood and Haguewood*, 292 Or 197, 212-13, 638 P2d 1135 (1981), and *Edwards and Edwards*, 73 Or App 272, 698 P2d 542 (1985), to make the blanket argument that an attorney fee provision is void as against public policy in the context of a chapter 107 proceeding.

Both *Edwards* and *Haguewood* essentially hold that the parties cannot deprive the trial court of its equitable discretion to award either party attorney fees. Otherwise, either spouse might be "denied the opportunity to sue or defend due to lack of equal access to marital resources which may be available for that purpose." *Haguewood*, 292 Or at 213. In

---

[1] Husband does not argue that the trial court abused its discretion by failing to award him attorney fees under ORS 107.105(1)(i).

*Edwards*, the husband argued that the trial court had no discretion to refuse to award him attorney fees pursuant to the property settlement agreement. Those cases are inapposite because the trial court's discretion to award attorney fees is not at issue here. Here, husband seeks attorney fees pursuant to the terms of the parties' antenuptial agreement. An antenuptial agreement is a contract, and we should give effect to the intent of the parties. Husband does not contest the trial court's failure to award attorney fees under chapter 107 and, thus, the trial court's discretion to award attorney fees below is not at issue.

█ █    When parties contemplate dissolution of their marriage and enter into a property settlement agreement, each party is charged with the duty to look out for, and consider, the interests of the other. For that reason, a court is not bound to approve property settlement agreements; they will only be enforced to the extent that they are fair. *Bach and Bach*, 27 Or App 411, 414-15, 555 P2d 1264 (1976) ("[p]roperty settlements made in anticipation of a dissolution proceeding are strictly enforceable only when they are equitable given the circumstances of the case"). In *Eltzroth and Eltzroth*, 67 Or App 520, 525, 679 P2d 1369 (1984), we stated that we

> "have long recognized that a husband and wife do not deal at arms' length and have imposed a fiduciary duty of the highest degree in transactions between them. Because the fiduciary duty is imposed as a result of the confidential relationship between the parties, it continues while the parties contemplate divorce, as long as the confidential relationship remains intact and the parties are not dealing at arms' length through separate agents or attorneys." (Citation omitted; footnote omitted.)

The trial court's statutory discretion to award either party attorney fees bears directly on the equities of the property distribution. As the dissent correctly quotes from *Haguewood*, without the discretion to award attorney fees, all of the myriad issues arising in such a proceeding might not be litigated, and that could lead to an unfair result.

█    In contrast, the attorney fees provision in this case is found in an antenuptial agreement, a contract that the parties made before marriage. Parties contemplating marriage

are also under a fiduciary duty. *Knoll and Knoll*, 65 Or App 484, 671 P2d 718 (1983). It is the limited duty, however, fully to disclose one's assets. In *Knoll*, we said that the duty to fully disclose assets is required " 'so that the prospective [spouse] may have sufficient knowledge on which to base [a] decision to enter into the agreement.' " *Id.* at 487 (quoting *Bauer v. Bauer*, 1 Or App 504, 507-08, 464 P2d 710 (1970)). That duty arises because we recognize that before marriage, each party exercises control over his or her individual assets and, thus, the other party does not have knowledge of those assets. *See Elztroth*, 67 Or App at 525 (stating principle). The purpose of entering into an antenuptial agreement is self-protection.[2] Each party to an antenuptial agreement then, is concerned with his or her own self-interest. In Oregon, antenuptial agreements are recognized and favored. By enacting ORS 108.700 to ORS 108.740, the legislature has expressly approved such agreements and provides for and supports the enforcement of their provisions.

■ In this case, the record reveals that the parties were dealing at arms' length when they executed the antenuptial agreement.[3] Husband's attorney drafted the agreement and wife met with husband and husband's attorney and discussed the agreement. Wife received the final draft of the

---

[2] This principle is best illustrated by husband's testimony below:

"Q [W]hen did you begin to talk to [your wife] about a premarital agreement?

"A Probably at the end of January or the first part of February of 1988.

"Q And what did you tell her?

"A I told her that we needed to get one signed and everything to protect each other, you know, in case something did happen.

"Q Were you willing to get married without one?

"A No.

"Q Did you tell her that?

"A Yes."

[3] Although our review in dissolution cases is *de novo*, we give deference to the trial judge's opportunity to observe the witnesses first hand. *McCoy and McCoy*, 28 Or App 919, 923-24, 562 P2d 207, *mod* 29 Or App 287, 563 P2d 738 (1977) (subsequent review clarifying the date from which interest would run). We recite husband's version of the facts because the trial court found husband's version of the circumstances surrounding the execution of the agreement more credible than wife's and nothing in our review of the record indicates that that finding was incorrect. *Merrill and Merrill*, 275 Or 653, 657-58, 552 P2d 249 (1976).

agreement several weeks before the wedding and had several days to consult with an attorney. Both husband and his attorney advised wife to do so. Wife testified that she knew why husband wanted an antenuptial agreement and the scope of the agreement. There was uncontradicted testimony that she knew all the information about husband's business affairs and that she was a "knowledgeable" and "competent" business person. Husband and wife signed the agreement two weeks before the wedding.

■■     An antenuptial agreement is a contract. In the event the parties decided to live apart but remain married, we would give effect to the attorney fees provision if one party brought suit to enforce the terms of the agreement. We should not treat the provision differently simply because we review it in the context of a dissolution proceeding. In *Purcell and Purcell*, 99 Or App 668, 783 P2d 1038 (1989), we recognized that the statute and an attorney fee provision in an antenuptial agreement need not be mutually exclusive. In *Purcell*, the husband appealed from a judgment awarding wife statutory attorney fees in a dissolution proceeding. The husband argued that he was the prevailing party below and that he should be awarded attorney fees in accordance with the parties' antenuptial agreement. We did not award the husband attorney fees, ostensibly because he did not seek an award of attorney fees in the trial court. We concluded that the trial court properly awarded the wife statutory attorney fees, however, because the parties did not (and could not) "contract away" their statutory right to attorney fees. *Id.* at 671. The import of *Purcell*, then, is that the two principles are consistent: that the trial court can award attorney fees under an antenuptial agreement for fees incurred in its enforcement, in addition to an award of attorney fees based on need. As a practical matter, the awards could be offsetting in whole or in part.

■     In this case, we conclude that the attorney fees provision should be enforced. It provides:

> "If any suit, action or other proceeding or any [*sic*] from a decision therein, is instituted to establish, obtain or enforce any right resulting from this agreement, the prevailing party shall be entitled to recover from the adverse party, in

addition to costs and disbursements, an award of reasonable attorney fees to be set by the trial court or appellate court in any such suit, action or proceeding."

Because the antenuptial agreement does not define the term "prevailing party," the definition in ORS 20.096(5) applies. *Carlson v. Blumenstein*, 293 Or 494, 499-500, 651 P2d 710 (1982); *Meduri Farms, Inc. v. Robert Jahn Corp.*, 120 Or App 40, 43, 852 P2d 257 (1993). ORS 20.096(5) defines prevailing party as "the party in whose favor final judgment or decree is rendered." We must first determine whether there is a prevailing party; if there is, there can only be one. *Marquam Investment Corp. v. Myers*, 35 Or App 23, 31, 581 P2d 545, *rev den* 284 Or 341 (1978). When both parties seek monetary damages and each party succeeds on at least one of its claims, the prevailing party is the party who received the net award. *Meduri Farms*, 120 Or App at 44; *Pelett v. Welch*, 71 Or App 761, 763, 694 P2d 574 (1985). However, when one or both parties seek nonmonetary relief, a court determines whether there is a prevailing party by weighing "what was sought by each party against the result obtained * * *." *Lawrence v. Peel*, 45 Or App 233, 243, 607 P2d 1386 (1980) (parties sought declaration of their rights under easement agreement and right of first refusal); *see also Ladum v. City of Reedsport*, 83 Or App 666, 669, 733 P2d 66 (1987) (declaratory judgment action under commercial lease); *Meduri Farms*, (plaintiff lessee sought to enjoin defendants, corporate lessor and two principal shareholders, from interfering in its orchard operation and defendants counterclaimed for termination of the lease, breach of contract for unpaid rents and clean-up costs, fraud in the grading of the cherries and for constructive trust).

In this case, wife sought to avoid the parties' antenuptial agreement and claimed an equal interest in all of their assets, whether jointly or separately owned. She also sought to have husband pay all of the debts incurred during the marriage and to pay for her attorney fees and costs. Husband requested that the property and debts of the parties be distributed in accordance with the premarital agreement of the parties. He also requested child support payments of $4,256 as reimbursement for the monies he expended supporting wife's son for the months that wife's son lived with

him following the parties' separation. Finally, husband asked that wife be required to pay his reasonable attorney fees and costs. We held that the antenuptial agreement was valid and that husband was entitled to have the terms of the agreement enforced. Accordingly, we concluded that the trial court erred by including corporate assets in the amount of $31,500 in the marital property that was subject to division. After segregating the corporate assets from the marital assets, we awarded the corporate assets to husband and then divided the marital debt and property. After the marital debt and property were divided, we awarded wife a judgment of $17,312 to equalize the division. In summary, both parties sought and obtained a dissolution of their marriage and the division of their debts and property; wife received a net money judgment. Because we held, however, that the antenuptial agreement was valid and enforceable, husband should have prevailed at the trial court level on the significant disputed issue. He shielded corporate assets valued at $63,000[4] from being counted as marital property; the parties' marital property subject to division totals $43,648. In the balance then, we conclude that husband has prevailed and, therefore, is entitled to his reasonable attorney fees under the contract.

Reconsideration allowed; opinion modified; reversed and remanded to award attorney fees to husband; otherwise affirmed as modified.

**ARMSTRONG, J.,** dissenting.

The majority holds that husband is a prevailing party under the antenuptial agreement and, therefore, is entitled to recover attorney fees at trial in this dissolution proceeding. I disagree. Contrary to the majority's view, the attorney-fee provision in the parties' antenuptial agreement is unenforceable in a dissolution proceeding, because it is contrary to public policy to control a court's discretion to award attorney fees in such a proceeding. It follows, then,

---

[4] The trial court determined that husband should receive one-half the value of the corporate assets "free and clear" of any claim by wife, pursuant to the antenuptial agreement, and that the other half, $31,500, should be considered marital property and divided evenly.

that the trial court properly denied husband an award of attorney fees under the agreement.

ORS 108.710 controls the permissible scope of antenuptial agreements. It lists subjects that those agreements can cover (such as the obligations of the parties with respect to property) and those that they cannot (such as limitations on child support). It also provides that:

> "Parties to a premarital agreement may contract with respect to:
>
> "* * * * *
>
> "(h) Any * * * matter, including their personal rights and obligations, *not in violation of public policy* or a statute imposing a criminal penalty."

ORS 108.710(1)(h) (emphasis supplied).

Forcing the court to award attorney fees to one party or the other in a dissolution proceeding violates public policy, because it deprives the court of the discretion that ORS 107.105(1)(i) intends it to have to make such an award. ORS 107.105(1)(i) provides, in relevant part:

> "(1) *Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows*:
>
> "* * * * *
>
> "(i) For a judgment against one party in favor of the other for any sums of money found to be then remaining unpaid upon any enforceable order or orders theretofore duly made and entered in the proceedings pursuant to any of the provisions of ORS 107.095, and *for a judgment against one party in favor of the other or in favor of the other's attorney for any further sums as additional attorney fees or additional costs and expenses of suit or defense as the court finds reasonably and necessarily incurred by such party; or*, in the absence of any such order or orders pendente lite, *a like judgment for such amount of money as the court finds was reasonably necessary to enable such party to prosecute or defend the suit*."

(Emphasis supplied.) *See also* ORS 107.445 (gives courts discretion to award attorney fees in "any proceeding brought

under ORS 107.095, 108.110 and 108.120"). Thus, ORS 107.105(1)(i) establishes a public policy that courts should have discretion to award attorney fees to either party in a dissolution proceeding, particularly when such an award may be necessary to enable a party to litigate the issues raised in such a proceeding.

The Supreme Court has discussed the public policy underlying ORS 107.105(1)(i) in *Haguewood and Haguewood*, 292 Or 197, 212-13, 638 P2d 1135 (1981). There, the court stated that "the statute is not intended to compensate the prevailing party. Indeed, it is often difficult to determine which party prevails in a dissolution suit." The court continued:

> "*We regard the statute as a legislative recognition that dissolution affects interests of the greatest personal importance and that neither spouse should be denied the opportunity to sue or defend due to lack of equal access to marital resources which may be available for that purpose.* The 'financial resources of the parties, the property division made by the decree,' and the support orders, if any, are all relevant to a trial court's determination of attorney fees under the statute. *If neither party has the resources, whether in the form of assets or earning power, to pay the costs of litigation, it would be inequitable to require either to pay the costs of the other. On the other hand, if the parties are equally able to bear the costs of litigation, an order for one to pay the other's costs would not be inequitable.* The more difficult situation occurs where the cash, liquid assets or income-producing capability are in the hands of one party as, for example, when a custodial parent receives a house, young children and a support order, and the other spouse receives his or her professional practice or the family business. In such a case, provisions for the spouse without resources at hand should be made and reflected in the property division."

*Id.* at 213 (emphasis supplied).

In the context of a dissolution action, the legislature has established a public policy that neither party to the action should be prohibited from litigating any of the myriad issues that arise in such a proceeding because of a lack of

resources. ORS 107.105(1)(i); ORS 107.445. It would be contrary to that policy to allow parties to usurp the trial court's discretion to make an equitable award of attorney fees to either party in the proceeding. Hence, the attorney-fee provision in the antenuptial agreement is unenforceable because it violates public policy to the extent that it applies to an award of attorney fees in a dissolution proceeding.

That conclusion finds support in our decision in *Edwards and Edwards*, 73 Or App 272, 698 P2d 542 (1985). *Edwards* involved a proceeding to modify an award of spousal support. The original dissolution judgment had incorporated the parties' property settlement agreement, and that agreement provided that the prevailing party in later litigation to enforce it could recover attorney fees. We held that the attorney-fee provision could not be enforced because it denied the trial court the discretion that the legislature had given it to decide whether to award attorney fees to either party in such a proceeding. *Id.* at 281.

The majority tries to distinguish *Edwards* on two grounds, neither of which is availing. It asserts that antenuptial agreements are favored. 143 Or App at 28. Even assuming that that is true,[1] I doubt that antenuptial agreements are any more favored than are property settlement agreements that have been incorporated into dissolution judgments, as the agreement in *Edwards* was.

The majority also draws a distinction between property settlement agreements and antenuptial agreements on the ground that the fiduciary obligations owed by the parties in preparing those agreements differ. 143 Or App at 27-28. Again, assuming that that is true,[2] it has no bearing on whether the principle on which *Edwards* is based applies to this case. *Edwards* held the attorney-fee provision in the property settlement agreement to be invalid because it

---

[1] I question whether it is meaningful to speak in the abstract of a type of agreement being "favored." If, as here, the legislature has enacted statutes to deal with a particular type of agreement, our task is to interpret and give effect to the statutes, not to apply some general policy favoring such agreements.

[2] One can imagine circumstances in which inclusion of a reciprocal attorney-fee provision in an agreement would violate the fiduciary obligations owed by the parties to the agreement. Nevertheless, it does not appear obvious that inclusion of such a provision would violate those obligations in most cases.

deprived the court of the discretion that the legislature had given it to award fees, not because a party breached his or her fiduciary obligations by including the provision in the agreement.

The issue we must decide is whether it is contrary to public policy to enforce a contractual provision that constrains the court's exercise of discretion to award attorney fees in an ORS chapter 107 dissolution proceeding. *Edwards* establishes that it is. Unless we are prepared to overrule *Edwards*, we must deny husband's claim for attorney fees under the antenuptial agreement.[3]

Deits, Riggs, and Leeson, JJ., join in this dissent.

---

[3] Contrary to the majority's view, *Purcell and Purcell*, 99 Or App 668, 783 P2d 1038 (1989), has no bearing on this case. *Purcell* involved a request for attorney fees in a chapter 107 dissolution proceeding, based on an attorney-fee provision in an antenuptial agreement. Because the party who sought fees under the agreement did not request them at trial, we did not consider whether he was entitled to recover fees. Consequently, we did not consider, let alone resolve, whether the attorney-fee provision was enforceable in such a proceeding.