Argued and submitted March 17, on appeal, judgment modifying child support affirmed; judgment vacating stipulated judgment reversed and remanded as to property division, otherwise affirmed; on cross-appeal, affirmed July 5, 2006

## In the Matter of the Marriage of

### Caryl A. PIERCE,
nka Caryl A. Jamison,
*Appellant - Cross-Respondent,*

*and*

### Milton C. PIERCE,
*Respondent - Cross-Appellant.*

### 01-DS-0123; A126585

138 P3d 889

Nancy A. Borneman argued the cause for appellant - cross-respondent. With her on the briefs was Dutli & Borneman, LLP.

Ellen Krider argued the cause for respondent - cross-appellant. With her on the brief were J.C. Van Voorhees and Van Voorhees & Krider.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Pratt, Judge pro tempore.

PRATT, J. pro tempore.

**PRATT, J. pro tempore**

Wife appeals after the trial court vacated the property provisions of a stipulated judgment of dissolution of marriage and entered a new judgment for the division of the parties' marital property pursuant to ORCP 71 C.[1] The trial court also granted husband's motion to reduce the amount of child support payable to wife as part of a modification proceeding. Wife makes four assignments of error. Husband cross-appeals and makes two assignments of error. On *de novo* review, ORS 19.415(3), we reverse in part and affirm in part.

The parties were married in November 1987 and had two children. They separated in June 2000, and the marriage was dissolved by stipulated judgment on December 8, 2001. After they separated, wife retained an attorney and had a draft petition prepared. The parties discussed the proposal for over a year, deleting a provision for spousal support to which husband had objected. The parties finally agreed to a stipulated judgment, which included provisions for child support and division of marital property. The stipulated judgment gave a larger portion of the property division to wife. It also required husband to pay child support of $1,300 per month. In June 2002, the child support obligation was reduced, by administrative order, to $1,077 per month.

In August 2002, husband filed a motion to set aside the stipulated dissolution judgment and for modification of child support. After a hearing on the motion to set aside the portion of the judgment dealing with the property division, the trial court issued a letter opinion, finding that

"[a]fter the separation of the parties and prior to the entry of the decree that [wife] consulted counsel and presented a draft decree to [husband]. After [husband] rejected portions of the decree, [wife] took the draft back to her attorney and

---

[1] ORCP 71 C provides:

"This rule does not limit the inherent power of a court to modify a judgment within a reasonable time, or the power of a court to entertain an independent action to relieve a party from a judgment, or the power of a court to grant relief to a defendant under Rule 7 D(6)(f), or the power of a court to set aside a judgment for fraud upon the court."

changes were incorporated. At no time did [husband] speak or meet with [wife's] counsel. Said another way, all negotiations were conducted between husband and wife. At the time of the negotiations [wife] was: 1) educated in and professionally practicing the administration of financial records; 2) keeping track of and managing the parties['] financial and tax records. Also, [wife] had the benefit of a college education compared to [husband's] 9th grade education. At no time did [wife] prepare and provide [husband] with sufficient financial data to allow him the opportunity to compare the relative asset distribution to the parties. [Husband] relied upon [wife's] knowledge of the parties' financial records. A fiduciary relationship existed between the parties."

There is no evidence in the record that wife concealed the existence of any assets, misrepresented the value of any assets, or refused to provide husband with any requested information regarding any asset. There is also no evidence that husband made any effort to ascertain the value of any marital assets under wife's control before signing the stipulated judgment.

The trial court set aside the stipulated judgment under ORCP 71 C, finding that (1) wife had been awarded a disproportionate award of assets; (2) she had an "ongoing and intimate knowledge of the parties' financial records"; and (3) she "took advantage of her superior education and financial acumen to violate her fiduciary duty of good faith in such a manner as to create a gross inequity in the division of the parties' assets." After a subsequent hearing, the court also modified the child support to $506 per month, finding that there had been a substantial change in circumstances due to the fact that the original child support amount had been based on anticipated profits from husband's trucking business, which had not been realized.

On appeal, wife first argues that the trial court erred in setting aside the stipulated property division because husband did not meet his burden under ORCP 71 C. She asserts that she did not have a fiduciary duty to husband because there was not a confidential relationship between the parties, and, in any case, there was no evidence of misconduct on her part, and the request was not made within a reasonable time.

■■ We review a trial court's actions pursuant to ORCP 71 C for abuse of discretion. *Dept. of Human Resources v. Shinall*, 148 Or App 560, 563, 941 P2d 616 (1997). Under ORCP 71 C, a court's authority to modify a judgment is "limited to extraordinary circumstances such as extrinsic fraud, duress, breach of fiduciary duty or gross inequity." *Campbell and Campbell*, 151 Or App 334, 339, 948 P2d 765 (1997).

A fiduciary duty exists when there is a relationship of special confidence, in which one party to the relationship is bound to act in good faith and with due regard to the interests of the other. *Starkweather v. Shaffer*, 262 Or 198, 205, 497 P2d 358 (1972). That fiduciary duty continues " 'while the parties contemplate dissolution of their marriage as long as the confidential relationship remains intact, and the parties are not dealing at arms' length through separate agents or attorneys.' " *Auble and Auble*, 125 Or App 554, 560, 866 P2d 1239 (1993), *rev den*, 318 Or 478 (1994) (quoting *Eltzroth and Eltzroth*, 67 Or App 520, 522, 679 P2d 1369 (1984)). Here, husband argues that wife had a fiduciary duty to him because, "[d]uring the time the parties were establishing the judgment terms, Wife continued to manage the parties' financial affairs, including the trucking business and maintained the parties' financial documents" and that wife "stayed involved and acted so as to perpetuate a relationship of trust" between the parties. For the purposes of this case, we will assume, without deciding, that wife owed a fiduciary duty to husband. Therefore, we must determine whether wife breached that duty.

■ A fiduciary duty requires one party to deal with the other party "fairly and to make a full and frank disclosure of all circumstances materially bearing on the contemplated agreement, including a full disclosure of marital assets." *Eltzroth*, 67 Or App at 526. A disproportionate division of marital assets is insufficient to show a breach of a fiduciary duty where it is not the result of one party's misconduct or overreaching. *Harder v. Harder*, 49 Or App 582, 584, 619 P2d 1367 (1980).

■ Husband argues that wife breached her fiduciary duty because she "used her superior professional knowledge, experience, and personal knowledge of the parties' financial

affairs to continue her fiduciary relationship with Husband through the dissolution and, in doing so, obtained a stipulated dissolution judgment which was substantially inequitable to Husband." Husband points out that wife worked as an accountant for Les Schwab, had at least five years of college education, and handled bookkeeping for the family, while he worked as a truck driver and had only a ninth grade education.

Husband acknowledges that wife did not attempt to hide any assets, but argues that she did not fully and frankly disclose the value of her interests in those assets, and that she made "material misstatements and omissions in order to induce Husband to sign the Judgment." Those misstatements, he asserts, are her "threats to take the children, her statements that the monies she requested were necessary to get by on for the children, that the support amount of $1,300 was what she needed, that she needed the house for the children to stay at, and to not get an attorney." However, none of those statements is relevant to the value of the marital assets, and, at heart, husband's argument is that wife failed to disclose the *value* of the assets, not the assets themselves. Husband was aware that the assets existed, and does not argue that wife misrepresented the value of the assets or that he relied on those valuations. Husband offered no evidence to the effect that, had he known the precise value of the marital assets, he would not have agreed to the stipulated judgment. Husband has the burden of proving that any misrepresentation was material and that the failure to disclose the value of marital assets affected his agreement to sign the stipulated judgment. *Auble*, 125 Or App at 561. A difference in education is irrelevant unless wife took advantage of husband in some specific way, and there is no evidence in the record that wife told husband that the property division was "fair" or "equal" and that husband had relied on those statements. Parties to a dissolution can agree on an inequitable settlement and often do, for myriad reasons. Those parties cannot later claim a breach of fiduciary duty without some evidence of actual wrongdoing. Because there is no evidence that wife breached any fiduciary duty she may have had, the trial court

erred in setting aside the stipulated judgment under ORCP 71 C.[2]

■      In her fourth assignment of error, wife argues that the trial court erred in finding a substantial change of circumstances warranting the modification of child support. In the original judgment, husband stipulated to $1,300 per month for child support. The stipulated decree does not reflect the incomes of the parties used for purposes of calculating child support. The figure of $1,300 was calculated by wife's attorney and was based on information provided by wife to her attorney. Husband was not aware of the guidelines calculations or the income figures used to calculate the child support. He agreed to pay $1,300 per month child support in the stipulated decree because that was what he understood wife needed "[j]ust to pay the bills and live." In May 2002, he filed a request for modification of child support, requesting that his child support obligation be reduced to $427 per month. On June 28, 2002, the state modified the child support amount downward to $1,077 per month, by administrative order. Neither party appealed the order. In August 2002, husband filed the motion to set aside the stipulated dissolution judgment and motion for modification of child support, and later filed a motion to vacate the state's administrative order, which the trial court granted. Wife does not assign error to that ruling. However, she argues that husband failed to show a substantial change in circumstances since the stipulated judgment. She asserts that, because husband is self-employed, he can write off personal expenses, accelerate the depreciation of business assets, and has a "lot of 'walking around money' in this [sic] pocket that he doesn't have to pay taxes on." She also argues that his business is more successful than it was at the time of the stipulated judgment and that he is doing better financially than he represented at trial. She argues that the court should take into consideration the fact that he has purchased new trucks, rather than used, for his business, which she asserts is not an "ordinary and reasonable business expense."

---

[2] Because of our disposition of wife's first assignment of error, we need not address her second and third assignments.

Under ORS 107.135(3)(a), a court may modify a child support order when there has been a substantial change in economic circumstances that was not anticipated at the time of the original judgment. *Nieth and Nieth,* 200 Or App 582, 584, 116 P3d 234 (2005). The burden of showing that a substantial change has occurred is on the party seeking the modification. *Id.* We review the trial court's findings *de novo.* ORS 19.415(3). For purposes of determining the child support obligation where a parent is self-employed, "gross income is defined as gross receipts minus costs of goods sold minus ordinary and necessary expenses required for self-employment or business operation." OAR 137-050-0350. ORS 25.290 provides that the child support obligor "has the burden of proof and must furnish documentation to support any [ordinary and necessary] offsets claimed." Here, the trial court found that

"[a]t the time the [stipulated] decree was entered [husband] stipulated to child support of $1,300.00 per month. The court could not locate a child support computation worksheet in the court's official file, however, Exhibit 120 presents what appears to be a draft support computation sheet. The worksheet contemplates a gross income of $1571.00 for [wife] and $7700.00 for [husband]. Not only does the form demonstrate a mathematical error * * *, but also the computation reflects a spousal support obligation that does not exist in the case at bar.

"* * * * *

"At the time the parties entered into their stipulation to set child support, they anticipated [husband's] trucking business would generate substantial income. However, the financial history of the operation does not support the original assumption. This court concludes the original support calculation was fundamentally flawed and a substantial change in economic circumstances has been demonstrated by [husband].

"[Husband's] income computation requires adjustment. * * * [Husband's] adjusted income for 2001 and 2002 respectively was $20,909 and $28,423. The income shall be based upon ($28,423) [husband's] adjusted 2002 income set forth ($22,523) herein and [wife's] 2002 Les Schwab W-2 income form."

Husband's attorney noted that the court had transposed some numbers and that husband's actual adjusted income was $23,103 for 2001 and $26,230 for 2002. Subsequently, based on the corrected 2002 amount, the court ordered husband to pay wife $506 per month in child support.

The basis for the trial court's ruling reducing husband's child support obligation was that the expectation that husband's trucking business would be more successful was not realized. The numbers calculated by the trial court show that the change in husband's actual income from 2001 to 2002 was a slight increase. Husband's yearly income increased by $3,127 from 2001, when the stipulated judgment was signed, to $26,230 in 2002, which converts to a monthly income of $2,186. In addition, in its letter opinion, the trial court stated that "[i]t appears the business is becoming more profitable." Conversely, the difference between what wife's attorney assumed husband's income to be (and upon which he based the child support calculations) when calculating the $1,300 per month child support and husband's actual income in 2001 and 2002 is substantial. At the time the stipulated agreement was signed, the calculations were based on an assumption that husband's income would be $7,700 per month. That is a difference of $5,514 in income per month between husband's anticipated income and actual income for 2002. Husband's actual income is therefore so far below the original expectations of the parties as to justify a finding of a substantial change in circumstances. *Cf. Thomsen and Thomsen,* 167 Or App 218, 224, 2 P3d 432 (2000).

The next issue is whether the change was unanticipated. The record, including the original judgment, indicates that husband was not aware of the income figures used to calculate the child support. There is also no evidence that the parties anticipated that husband's income in 2002 would be more than 70 percent less than the income figures used to calculate the original child support, and, as we said in *Nieth,* "[s]peculative incomes are not the proper basis for child support determinations." 200 Or App at 586. The nature of the change, combined with the absence of any evidence that a change in economic circumstances was anticipated, justifies

a conclusion that the change in circumstances was, in fact, unanticipated. *Id.* at 585.

We also conclude that the trial court properly recalculated the child support based upon the parties' actual incomes according to the state child support guidelines. Though wife argues that the purchase of new trucks rather than used is not an "ordinary and reasonable business expense," husband presented evidence at trial that the purchase of new equipment lowered maintenance expenses and had little impact on his business income. The trial court found that "this business choice" was made in good faith and not to avoid a support obligation. We find nothing in the record to warrant disturbing that finding. Accordingly, we affirm the modification.

Husband cross-appeals, making two assignments of error. He first assigns error to the trial court's refusal to award him attorney fees and costs, arguing that, because the court found that wife acted in bad faith, it was required to do so under ORS 107.135(8). Because we find, as noted above, that there was no evidence of bad faith by wife, this assignment fails. Because of our disposition of wife's first assignment of error, we need not address husband's second assignment of error.

On appeal, judgment modifying child support affirmed; judgment vacating stipulated judgment reversed and remanded as to property division, otherwise affirmed. On cross-appeal, affirmed.