Argued and submitted January 5, reversed April 4, 2012

In the Matter of the Marriage of

Celin Janel BOCK,
*Petitioner-Respondent,*
*and*

Robert David BOCK,
*Respondent-Appellant.*

Washington County Circuit Court
C081382DRA; A146968

275 P3d 1006

Kimberly A. Quach argued the cause for appellant. With her on the briefs was Lechman-Su & Quach, PC.

Craig M. Cowley argued the cause for respondent. With him on the brief was Gevertz, Menashe, Larson & Howe, P. C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Father appeals a supplemental judgment that modified the child-support provisions of the judgment that dissolved his marriage to mother. Father does not request *de novo* review of the facts, and we do not choose to exercise *de novo* review in this case. *See* ORS 19.415(3)(b) (providing for discretionary *de novo* review of certain equitable actions). Consequently, we "are bound by the trial court's findings of historical fact" as long as they "are supported by any evidence in the record." *Porter and Griffin*, 245 Or App 178, 182, 262 P3d 1169 (2011). On review for legal error, we reverse.

After 17 years of marriage, mother and father were divorced in December 2008 by a stipulated general judgment of dissolution that followed mediation. Mother and father have three minor children who, at the time of dissolution, were one, five, and eight years old. The judgment awarded the parties joint custody of the children, with mother retaining primary physical custody and father parenting less than half the time; the judgment also expressed the parties' intent that mother remain a full-time homemaker until their youngest child was "of school age." The judgment was based on mother having an imputed monthly minimum-wage income of $1,377 and father having monthly income of $16,667, before consideration of spousal support.[1] Based on those income levels, the presumptive level of child support then was $731 per month under the Oregon Child Support guidelines,[2] but the parties agreed to deviate downward to $500 per month based on the property division, which favored mother:

> "The presumptive amount of support is inappropriate due to the financial resources made available to [mother] by [father] agreeing to provide her the 'long half' of the parties' marital estate, by specifically providing her with $60,000 in

---

[1] The general judgment required father to pay mother transitional and maintenance spousal support of $4,500 per month through December 2012, and maintenance support of $2,000 per month for an additional four years. Part of the basis for the transitional support award was the "parties' agreement that [mother] should remain in the home until their youngest child is of school age."

[2] The guidelines are established by the Division of Child Support in the Oregon Department of Justice, ORS 25.270(5), and are set out in administrative rules, currently OAR 137-050-0700 through 137-050-0765.

greater value of the marital estate than what [father] is receiving."

The judgment effectuated that "long half" agreement by granting mother a money award against father for $30,000, resulting in mother receiving $30,000 more, and father receiving $30,000 less, than half of the marital estate. The judgment also required father to maintain health insurance for the children, with father paying 80 percent of the uninsured health care expenses and mother paying the remaining 20 percent. Another provision allowed father to claim two of the parties' children as dependents for state and federal tax purposes.

In December 2009, one year after the stipulated judgment was entered, mother filed a motion to modify child support. In a supporting affidavit, mother claimed that (1) she had anticipated earning monthly investment returns of $1,450 after the divorce, which did not materialize;[3] (2) her income should not have been imputed at minimum wage given the parties' agreement that she would remain a homemaker until their youngest child started school; and (3) father should have been required to pay her the value of the dependency exemptions because mother could not afford to allow him that benefit. In a hearing memorandum, mother also alleged a change in circumstances based on father's income having increased since the dissolution judgment was entered.

After a May 2010 hearing on mother's motion, the trial court modified the general judgment in three respects. First, the court increased father's child-support obligation from $500 to $1,192 per month. The court did not base that modification on any change in mother's income or expenses.[4]

---

[3] Mother's claim about her expected investment income was based on a provision of the judgment that granted mother half of father's Intel stock shares and granted father half of mother's Intel stock shares, all of which were dividend-paying investments. Anticipating that aspect of the judgment, father and mother had transferred the investment holdings in early December 2008. On the thirty first of that month, the day after the parties' dissolution judgment was entered, mother liquidated 86 percent of the Intel stock awarded her under the judgment. The parties' disputes about mother's liquidation of that stock, which ultimately resulted in father paying a substantial amount of capital-gains tax, are not at issue on appeal.

[4] Mother does not take issue with that aspect of the trial court's ruling. She does not argue in this court, as she did below, that a drop in her expected

Rather, the court reasoned that the modification was appropriate because father's income had increased by approximately four percent since the 2008 judgment was entered.[5] Based on the parties' incomes, the court determined that father should pay $1,192 per month in child support, the presumptive amount under the 2010 guidelines. The court found that no rebuttal factors supported a downward departure from the presumptive amount of child support, including— after May 2010—the unequal property division on which the 2008 stipulated departure from the then-presumptive child-support amount had been based. Specifically, the court reasoned that "[t]he rebuttal factor of a long-half distribution of the marital estate * * * is sufficient to allow that lower-than-guideline support through May 2010, along with the dependency arrangement for 2008-09. Nonetheless, child support under the current guidelines should be $1,192, and not $500 per month."

Second, the trial court vacated the parties' agreement that father receive two of the three dependency exemptions, reasoning that the parties' agreement concerning those exemptions was "not consistent with the tax code and [was] unsupported by any findings." Third, the court modified the parties' medical support obligations, requiring father to "pay 100% of the children's unreimbursed health care costs up to $5,880 annually for all three children" and ordering the parties to each pay half of uninsured costs above that amount. Nothing in the court's lengthy letter opinion explicitly describes any unanticipated, substantial change of circumstances justifying those modifications to the general judgment.

Father makes several arguments on appeal, but we address only one, which is dispositive. Father contends that the parties' economic circumstances did not change substantially and unexpectedly between entry of the dissolution

investment income constituted a change in circumstances. Nor does she make any argument based on the trial court's imputation of income to her based on the minimum wage.

[5] The trial court's letter opinion and judgment recite various income figures; for purposes of this appeal, the specific amounts are unimportant, as the parties agree that the trial court based its modification on a four-percent increase in father's income.

judgment in December 2008 and the hearing in May 2010. Because no unanticipated and substantial change in circumstances occurred, he argues, the trial court lacked authority to modify the child-support provisions in the dissolution judgment.

In response, mother relies on two factors, which she contends combined to create a substantial change in circumstances. First, she points to the "four percent increase in Father's income the year following the judgment." Second, she notes that the trial court "also concluded that prior reasons for deviating from presumptive support no longer applied." At oral argument, mother clarified that point, arguing that the benefit she had enjoyed from the long-half property division—which was the basis for the parties' agreement to deviate from the presumptive amount of child support—"had run its course" by May 2010. According to mother, because the agreement did not explicitly describe a period of time during which the long-half property division was meant to justify a lower amount of child support, the trial court could conclude that the benefit that mother received from that property division had been "used up" by the time of the May 2010 hearing.

We reject both aspects of mother's argument. As mother acknowledges, a court has authority to modify a child-support order "when there has been a substantial change in economic circumstances that was not anticipated at the time of the original judgment." *Pierce and Pierce*, 206 Or App 699, 706, 138 P3d 889 (2006). The party seeking modification has the burden of showing that a substantial change has occurred. *Id.* Here, no substantial change in economic circumstances took place, much less one that was unanticipated.

With respect to the long-half property division, we discern no evidence in the record supporting the trial court's finding that mother no longer enjoyed any benefit from that division after May 2010. After all, the parties' agreement resulted in mother receiving only $231 per month less in child support than she would have had under the guidelines, a total of $3,927 in the 17 months between the judgment and

the May 2010 hearing—far less than the $30,000 benefit she received from the long-half property division.

More to the point, even if other information in the record did support a finding that the benefit had been "used up," we do not perceive how that would amount to a substantial, unanticipated change to the parties' economic circumstances. The parties agreed to the property division that resulted in a $30,000 benefit to mother; they also agreed that father would pay only $500 per month in child support. Nothing about those stipulated amounts, or about the date by which mother's benefit from the property division would "run its course," *changed* after December 2008 except, perhaps, mother's feelings about whether the stipulation was equitable. Buyer's remorse does not, however, amount to the kind of substantial and unanticipated change in circumstances that is the necessary predicate to a modification of child support. *Cf. Matar and Harake*, 246 Or App 317, 322, 270 P3d 257 (2011) (Oregon law encourages the settlement of dissolution disputes and requires enforcement of the resulting stipulated judgments except where enforcement "would violate the law or clearly contravene public policy."). No matter the equity or inequity of the parties' original stipulation—which we are in a poor position to assess, given our limited knowledge about the circumstances surrounding that agreement—only "those standards outlined by [ORS 107.135(4)(a)] may be used to determine if there has been a substantial change in economic circumstances." *Nibler and Nibler*, 184 Or App 23, 26, 55 P3d 529 (2002). Absent a violation of the law or public policy, the fairness of the terms in a stipulated agreement is not among those standards.[6]

Nor do we believe that, under the specific circumstances of this case, a four-percent increase in father's income over 17 months amounts to a substantial and unanticipated change in circumstances. Both parents testified that father's bonuses, which make up a significant amount of his total

---

[6] For similar reasons, we reject any contention that the trial court could modify father's child-support obligation because of mother's dissatisfaction with the stipulated provisions related to which party could claim tax exemptions for the dependent children.

income, have varied over the years, and mother testified specifically that she believed that father's bonus income had increased every year except in 2009. In that context, the four-percent increase in father's income was analogous to the kinds of minor, expected fluctuations in earnings that we have determined do not constitute substantial, unanticipated changes that could justify modification of a child-support obligation. *See Nieth and Nieth,* 200 Or App 582, 585-86, 116 P3d 234 (2005) (explaining that "some things are presumed to be anticipated," including shifts in income for a developing business, cost-of-living increases, and small changes to the consumer price index).

By comparison, when we have determined that changes in income justified modification to support orders, it has been because those changes were greater in magnitude than the four-percent increase here *and* were of a type that the parties would not have anticipated. For example, we held in *Nieth* that a 19 percent increase in the parties' combined income over four years justified a modification in one party's child-support obligation. There, "both parties had changed jobs," one party had been promoted into management, and neither party had anticipated those events. 200 Or App at 585. No such unexpected events occurred here, and we cannot yet tell whether the increase in father's income will continue over a significant period of time, as occurred in *Nieth*. *See also Luty and Luty,* 245 Or App 393, 400, 263 P3d 1067 (2011) (unanticipated decrease of over 90 percent in the father's income, which resulted from his cocaine addiction, justified a modification of his child-support obligation); *Pierce,* 206 Or App at 707 (characterizing as "slight" an increase from $23,103 to $26,230 in actual annual income and holding, by comparison, that a "more than 70 percent" difference between anticipated income and actual income did establish a substantial change in circumstances). In short, the four-percent increase in father's income is neither substantial nor unexpected, given the specific circumstances involved in this case. Accordingly, the trial court lacked authority to modify father's child-support obligations.

Reversed.